634 So.2d 37 (1994)
Edna T. VERRET
v.
Edward E. CARLINE and Merit Insurance Company.
No. 93 CA 0508.
Court of Appeal of Louisiana, First Circuit.
March 11, 1994.
Writ Denied May 13, 1994.
*38 William C. Dupont, Plaquemine, for plaintiff-appellee.
René J. Pfefferle, Baton Rouge, for defendant-appellant Merit Ins. Co.
Richard Creed, Jr., Baton Rouge, for defendant-appellant State Farm Ins. Co.
Before WATKINS, SHORTESS and FOGG, JJ.
SHORTESS, Judge.
Edna T. Verret (plaintiff) was involved in an automobile accident in Iberville Parish on either July 14 or August 14, 1989,[1] when the side of her vehicle was struck by a truck operated by Edward E. Carline. It was stipulated at trial that Carline ran a stop sign and that his sole fault caused the accident. Plaintiff sued Carline and his liability insurer, Merit Insurance Company (Merit), as well as her own uninsured/underinsured motorist insurer, State Farm Mutual Automobile Insurance Company (State Farm) (collectively, defendants). State Farm filed a third party demand against Carline. On the morning of trial, the parties agreed to dismiss Carline individually in both the main demand and the third party demand.[2]
The case was tried to a jury on damages alone. Defendants argued at trial that plaintiff did not sustain a new injury, nor did she aggravate a preexisting condition in the 1989 accident. A special interrogatory was presented to the jury: "Do you find that the accident in 1989 caused the Plaintiff any new injuries or any aggravation of any preexisting condition[?]" The jury answered, "Yes."
The jury was instructed on the verdict form that if it answered "yes" to this special interrogatory, it was to fill in the blanks to list the amount of damages for the following: aggravation of any preexisting injuries or conditions; pain and suffering, both physical and mental; permanent disability, if any; new physical injuries; and medical expenses, past and future. The jury filled each of these blanks except the last one with a zero. It found plaintiff's medical expenses, past and future, were $2,500.00.
*39 Plaintiff filed a motion for judgment notwithstanding the verdict (JNOV) or in the alternative for a new trial, and Merit did the same. The trial court denied Merit's motion but granted plaintiff's motion for JNOV. The court amended the judgment to award the following damages: aggravation of pre-existing condition, $25,000.00; pain and suffering, $10,000.00; and new physical injuries, $2,500.00. It did not change the awards of zero for permanent disability and $2,500.00 for medical expenses. Defendants appealed the judgment granting the JNOV. Merit's appeal was dismissed as abandoned.[3] Before us now is the appeal of State Farm, which raises only two assignments of error: (1) that the trial court erred in granting plaintiff's motion for JNOV; and (2) that the trial court abused its discretion in raising the total damage award from $2,500.00 to $40,000.00.
A JNOV is a procedurally correct device for raising an unreasonable damage award. Sumrall v. Sumrall, 612 So.2d 1010, 1013 (La.App. 2d Cir.1993); Lilly v. Allstate Ins. Co., 577 So.2d 80 (La.App. 1st Cir.1990), writ denied, 578 So.2d 914 (La.1991); La. C.C.P. art. 1811(F). When a trial court determines a JNOV is warranted because reasonable persons could not differ that the award was abusively low, it must determine the proper amount of damages. In making this determination, the trial court is not bound by the constraints imposed on appellate courts of raising the award to the lowest point reasonably within the discretion afforded that court. Instead, it should render a de novo award based on its independent assessment of damages. Anderson v. New Orleans Pub. Serv., 583 So.2d 829 (La.1991); Sumrall, 612 So.2d at 1013.
The jury found plaintiff sustained an aggravation of her preexisting injuries or new injuries in the 1989 accident. These two categories of damages were combined in one jury interrogatory, and we do not know if the jury found plaintiff sustained both types of damage. However, we do know the jury awarded no general damages for either category. When a jury finds a plaintiff suffered injuries in an accident, awards special damages, but fails to award general damages, the verdict is inconsistent. A trial court may properly grant a motion for JNOV when a jury has committed this legal error. Cf. Sumrall, 612 So.2d at 1015 (trial court properly granted a motion for JNOV where jury awarded damages for mental distress and medical expenses but no general damages for physical pain). Thus, the trial court correctly entered a JNOV in this case.
Having found the motion for JNOV was correctly granted, we must determine whether the trial court abused its vast discretion in its de novo award of damages.
Plaintiff was involved in a serious automobile accident in December 1984 which left her with disabling back pain. She was treated by an orthopedist until November 1988. Plaintiff testified that for a year before the 1989 accident she did not have any problems with her back or neck that required her to see a doctor on a regular basis, although she had a prescription for back pain refilled occasionally; that her neck began to hurt immediately after the accident; that she saw Dr. Gerard Falgoust, her family doctor, on the day of the accident; that he gave her an injection; that she had "a little neck problem" before the 1989 accident, but not the type of pain or limitations she has now; and that the accident aggravated her back problems for about a year following the accident, although neck pain has been her dominant complaint. Plaintiff further testified that the neck pain radiates into her shoulders; that her neck problem has worsened since March 1991; that the pain in her right arm causes her to drop things; that before the accident she had no problems like this with her arm and shoulders; that she had a little pain in her left shoulder after the 1984 accident but "nothing compared to what it is now"; that since the accident she has been unable to lift her right arm over her head, blow her hair dry, shave her underarms, or lift pots; and that she has trouble sleeping because of severe pain if she rolls onto her right side.
Dr. Allen S. Joseph, a neurosurgeon, saw plaintiff twice after the 1989 accident. He testified plaintiff told him her neck pain began in July 1989. His examinations were normal objectively, but he found decreased *40 range of motion in the neck and "giveaway weakness" in the right shoulder muscles, which is usually associated with pain. He stated he could not attribute any of plaintiff's complaints "specifically and solely" to the 1989 accident and could not state with probability whether plaintiff's complaints were from the 1984 accident, the 1989 accident, or both. However, if plaintiff was not seeing a doctor on a regular basis for neck pain before the accident, in his opinion it would be more reasonable to say the second accident either caused her condition to worsen or aggravated a "smoldering condition."
Dr. Gerard Falgoust, an internist, testified that in January 1989 plaintiff began using him as her family doctor; that she saw him five times between January 1989 and April 1989 for various maladies, but on none of those visits did she complain of pain in her neck, back, or shoulder;[4] that he had no record of giving her an injection on the day of the accident; and that he might have lost her chart for July 1989 when he moved his office that month.
Falgoust further testified that he and his partner Dr. Bill Gremillion treated her regularly between August 29, 1989, and February 1992 for neck, shoulder, arm, and back pain; that on August 29, 1989, she complained she was a "nervous wreck" because of the accident but that she did not complain of neck or back pain; that the majority of her complaints since 1989 have been due to the accident; that in his opinion there is a reasonable probability her complaints were caused by the 1989 accident; and that there is a "very reasonable probability that her neck pain was precipitated by the [1989] accident whether she had a preexisting problem or not."
Dr. R. Bryan Griffith, Jr., an orthopedist, testified that he treated plaintiff from October 1986 through November 1988 for a bulging lumbar disk and chronic cervical strain; that her neck complaints were significant but her back complaints were worse; that he saw her again in April 1992 at the request of defense counsel; that her complaints following the 1989 accident did not seem different from her complaints following the 1984 accident; and that in his opinion plaintiff's right shoulder pain was caused by adhesive capsulitis which he did not attribute to the 1989 accident.
Linda E. Darphin was plaintiff's physical therapist from February 2, 1988, through April 4, 1988. She testified that in 1988 plaintiff told her she had problems doing her hair, keeping her arms elevated, zipping her dress in the back, mopping, and vacuuming, but that she could do laundry and cook.
Based on our review of this evidence, we find no abuse of the trial court's discretion in awarding plaintiff $25,000.00 for aggravation of her preexisting injury, $10,000.00 for physical and mental pain and suffering, and $2,500.00 for her new injury. Thus, we affirm the judgment of the trial court in favor of plaintiff, Edna T. Verret, and against State Farm Mutual Automobile Insurance Company at its cost.
AFFIRMED.
NOTES
[1] Two accident reports which are identical except for the dates were introduced into evidence. The plaintiff's copy lists the date of the accident as August 14, 1989, while the defendant's copy shows the date as July 14, 1989.
[2] No judgment was ever signed dismissing Carline as a defendant or dismissing the third party demand. However, the judgment on the main demand casts only Merit and State Farm.
[3] State Farm's brief states Merit settled pending appeal.
[4] Falgoust conceded on cross-examination that on January 3, 1989, plaintiff complained of posterior cervical pain, but her primary complaints on that visit were elevated blood pressure, vomiting, and seeing spots before her eyes. He also noted that on March 8, 1989, she reported back pain in connection with flu-like symptoms.