655 So.2d 431 (1995)
Jeffery DAIGLE
v.
UNITED STATES FIDELITY AND GUARANTY INSURANCE COMPANY, M.J. Foster, M.J. Foster Industries (Bayou Sale), Bayou Sale Contractors, Inc., Stanley Sullivan, Amoco Oil Company and Amoco Production Company and M.J. Foster, Jr., Inc.
No. 94 CA 0304.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
*434 Stephen M. Morrow, James S. Gates, Opelousas, for plaintiff/appellant Jeffery Daigle.
James B. Supple, Franklin, for defendants/appellees USF & G, Murphy J. Foster, Jr. and Bayou Sale Contractors, Inc.
James H. Gibson, Lafayette, for intervenors/appellees Gray Ins. Co. and Gianfala & Son, Inc.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in an action for damages.

FACTS AND PROCEDURAL HISTORY
On November 10, 1988, thirty-one-year-old plaintiff, Jeffery Daigle, was painting heater treater piping at the Amoco Production Field near Charenton, Louisiana, while in the course and scope of his employment as a roustabout with Gianfala & Son, Inc. Plaintiff was in the personnel basket of a crane being operated by Stanley Sullivan, an employee of Bayou Sale Contractors, Inc., when the crane tipped over, causing the personnel basket to fall to the ground and plaintiff to sustain injuries.
On November 10, 1989, plaintiff filed a petition for damages, naming as defendants Bayou Sale Contractors, Inc., the owner of the crane; United States Fidelity and Guaranty Insurance Company (USF & G), which had issued a policy of public liability insurance to Bayou Sale Contractors, Inc.; Stanley Sullivan, operator of the crane; Amoco Oil Company; and Amoco Production Company.[1]
On December 19, 1989, USF & G and Bayou Sale Contractors, Inc. filed a third party demand against Amoco Production Company for indemnification, or, alternatively, for contribution for any amounts for which they might be cast in judgment.
On December 29, 1989, Gray Insurance Company and Gianfala & Son, Inc. filed a petition of intervention against USF & G, Bayou Sale Contractors, Inc., Stanley Sullivan, Amoco Oil Company, and Amoco Production Company for reimbursement of worker's compensation benefits and medical expenses paid to, or on behalf of, plaintiff.
On August 28, 1990, Amoco Production Company filed a reconventional demand against Gianfala & Son, Inc., seeking a defense in this matter, indemnity, and payment of all attorney's fees and costs.[2]
On October 11, 1990, Stanley Sullivan filed a third party demand against Amoco Production Company for indemnification, or, alternatively, for contribution, for any amounts for which he might be cast in judgment.
A jury trial began on June 22, 1992, and the jury returned a verdict on June 26, 1992, assessing Stanley Sullivan and Bayou Sale Contractors, Inc. with 95% of the fault and plaintiff with 5% of the fault and awarding plaintiff the following damages:

Physical pain and suffering 0
Mental pain and suffering 0
Past medical expenses $5,788.63
Future medical expenses 0
Lost wages (past, present, future)
and loss of earning capacity $2,789.85
 _________
 $8,578.48

On October 15, 1992, the trial court signed a judgment, in accordance with the jury's verdict, in favor of plaintiff and against Stanley Sullivan, Bayou Sale Contractors, Inc., and USF & G, in the amount of $8,149.56 ($8,578.48 less 5% for plaintiff's comparative *435 fault). The judgment dismissed, with prejudice, plaintiff's claims against Amoco Oil Company and Amoco Production Company, as well as the third party demand against Amoco Production Company. Additionally, judgment was rendered in favor of Gianfala & Son, Inc. and Gray Insurance Company and against Jeffery Daigle, Stanley Sullivan, Bayou Sale Contractors, inc., and USF & G, pursuant to stipulations, for reimbursement of worker's compensation benefits and medical expenses paid to or on behalf of plaintiff, i.e., those sums awarded by the jury for plaintiff's past medical expenses and past lost wages, subject to LSA-R.S. 23:1103C.
On October 22, 1992, plaintiff filed a "Motion for Judgment Notwithstanding the Verdict; Alternatively, Motion for New Trial; and Alternatively, Motion for Additur," contending that the jury verdict was one which reasonable people could not have reached, particularly, the allocation of 5% fault to plaintiff and the inadequate damage awards. On October 26, 1992, Judge Marcus A. Broussard, Jr., signed an order, stating that the post-trial motions would be taken under advisement to be decided on written memorandum, without oral argument. On February 10, 1993, Judge Broussard issued an order, granting plaintiff's motion for JNOV as to the removal of the jury's assessment of 5% fault to plaintiff, and granting a new trial on the issue of damages.
On February 19, 1993, the defendants filed a motion for reconsideration of the February 10, 1993, order, contending that, at the time the motions for JNOV and new trial were granted, the trial testimony had not yet been transcribed and that Judge Broussard had not been present at the trial. The defendants also requested a hearing on the post-trial motions.
On April 2, 1993, a hearing was held on the post-trial motions before Judge Pro Tempore Cheney C. Joseph, Jr. On April 16, 1993, Judge Joseph signed a judgment on the post-trial motions, granting plaintiff's motion for JNOV as to the following:
(1) Removal of plaintiff's 5% fault assessment;
(2) Increasing plaintiff's award for physical pain and suffering from $0 to $5,000.00; and
(3) Increasing plaintiff's award for mental pain and suffering from $0 to $5,000.00.
In all other respects, plaintiff's post-trial motions were denied, and the October 15, 1992, judgment was adopted as to all other issues raised.
Plaintiff appeals from the judgments dated October 15, 1992, and April 16, 1993, assigning the following specifications of error:
1. The jury committed reversible error and/or abused its discretion by awarding inadequate damages for the following items of damages:
A. Physical Pain and Suffering;
B. Mental Pain and Suffering;
C. Past Medical Expenses;
D. Future Medical Expenses;
E. Loss of Wages, past, present, and future, and loss of earning capacity.
2. The trial court committed reversible error in granting plaintiff's post trial motions for judgment notwithstanding the verdict, by awarding an inadequate amount of damages for mental and physical pain and suffering, and by failing to award additional damages for past and future medical expenses, and past and future loss of wages and loss of earning capacity.

JUDGMENT NOTWITHSTANDING THE VERDICT
A motion for a judgment notwithstanding the verdict (JNOV) may be granted on the issue of liability, damages, or both. LSA-C.C.P. art. 1811 F. If the verdict is supported by competent evidence and is not wholly unreasonable, the trial judge may not set it aside. Finnie v. Vallee, 620 So.2d 897, 900 (La.App.4th Cir.), writ denied, 625 So.2d 1040 (La.1993).
In ruling on a motion for JNOV under LSA-C.C.P. art. 1811, the trial court is required to employ the following standard: A JNOV should only be granted if the trial court, after considering all of the evidence in the light most favorable to the party opposing the motion, finds that it points so strongly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on the issue. Barnes v. Thames, 578 So.2d 1155, 1168 (La.App. 1st Cir.), writs denied, 577 So.2d 1009 (La.1991). JNOV should not be granted where there is a mere *436 preponderance of the evidence in favor of the mover; if the evidence opposed to the motion is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991). A JNOV is proper only where the trial judge concludes the verdict is one reasonable people could not have reached. Anderson v. New Orleans Public Service, Inc., 583 So.2d at 832; Lilly v. Allstate Insurance Company, 577 So.2d 80, 83 (La.App.1st Cir.1990), writ denied, 578 So.2d 914 (La.1991). In applying this standard, the court cannot weigh the evidence, pass on the credibility of the witnesses, or substitute its judgment of the facts for that of the jury. Barnes v. Thames, 578 So.2d at 1169.
A JNOV is a procedurally correct device for raising an unreasonable damage award. Orgeron v. Prescott, 93-926 (La.App. 5th Cir. 4/14/94), 636 So.2d 1033, 1040, writ denied, 94-1895 (La. 10/28/94), 644 So.2d 654; Verret v. Carline, 93-0508 (La.App. 1st Cir. 3/11/94), 634 So.2d 37, 39, writ denied, 94-0842 (La. 5/13/94), 637 So.2d 1070; Sumrall v. Sumrall, 612 So.2d 1010, 1013 (La.App. 2nd Cir.1993). When a trial court determines a JNOV is warranted because reasonable persons could not differ that the award was abusively low, it must determine the proper amount of damages. In making this determination, the trial court is not bound by the constraints imposed on appellate courts of raising the award to the lowest point reasonably within the discretion afforded that court. Instead, it should render a de novo award based on its independent assessment of damages. Anderson v. New Orleans Public Service, Inc., 583 So.2d at 833-34; Verret v. Carline, 634 So.2d at 39.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion, i.e., do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict? If the answer to the question is in the affirmative, then the trial judge correctly granted the motion, and the appellate standard of review of the JNOV is as if it were the only judgment of the trial court, namely the manifest error standard of review. If, however, reasonable persons in the exercise of impartial judgment might reach a different conclusion, then the motion should not have been granted, and the jury verdict should be reinstated. Anderson v. New Orleans Public Service, Inc., 583 So.2d at 832.
Therefore, the standard of review of a JNOV on appeal is twofold. First, we must determine whether the jury verdict is supported by competent evidence and is not wholly unreasonable. If the verdict is supported by competent evidence and is not wholly unreasonable, then the trial judge may not set it aside. To make this determination, we must, after considering all of the evidence in the light most favorable to the party opposing the motion, find that it points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on the issue. Barnes v. Thames, 578 So.2d at 1168.
Second, after determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. Gibson v. Bossier City General Hospital, 594 So.2d 1332, 1336 (La. App. 2nd Cir.1991); Higley v. Kramer, 581 So.2d 273, 276-78 (La.App. 1st Cir.), writ denied, 583 So.2d 483 (La.1991).
In determining whether the trial court erred in granting the JNOV as to quantum, the appellate court uses the same manifest error standard of review. If the answer is in the affirmative, then the trial court erred, and the jury's damage award should be reinstated. If the answer is in the negative, then the trial court's damages award based on its independent assessment of the damages is reviewed on appeal under the constraints of Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), i.e., the abuse of discretion standard of review. Orgeron v. Prescott, 636 So.2d at 1040.

*437 GENERAL DAMAGES

"General damages" involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. Boudreaux v. Farmer, 604 So.2d 641, 654 (La.App. 1st Cir.), writs denied, 605 So.2d 1373, 1374 (La.1992). The primary objective of general damages is to restore the party in as near a fashion as possible to the state he was in at the time immediately preceding injury. McCray v. Abraham, 550 So.2d 244, 248 (La.App. 4th Cir.1989).
The verdict form indicates that the jury found that plaintiff sustained injuries as a result of the November 10, 1988, accident and awarded special damages. However, the jury did not award plaintiff general damages. Plaintiff then filed a motion for JNOV to increase the general damage awards. The trial court granted the motion and awarded plaintiff $5,000.00 for physical pain and suffering and $5,000.00 for mental pain and suffering.
We must determine whether the trial court was correct in granting plaintiff's motion for JNOV as to general damages by considering whether reasonable persons erred in failing to award general damages.
It is well settled that, when a jury finds a plaintiff suffered injuries in an accident, awards special damages, but fails to award general damages, the verdict is inconsistent. A trial court may properly grant a motion for JNOV when a jury has committed this legal error. Verret v. Carline, 634 So.2d at 39; Sumrall v. Sumrall, 612 So.2d at 1015. Thus, in the instant case, the trial court correctly granted plaintiff's motion for JNOV as to general damages.
Having determined that the motion for JNOV was correctly granted, we must determine whether the trial court abused its vast discretion in its de novo award of general damages to plaintiff ($5,000 for mental pain and suffering and $5,000.00 for physical pain and suffering).
Dr. Stephen Snatic, neurologist, testified by deposition that he first treated plaintiff on December 5, 1988, for complaints of headache, neck, shoulder, low back, wrist, and leg pain, and temporal mandibular joint problems. Dr. Snatic noted that a CAT scan revealed normal results, that plaintiff seemed to have restricted movement of the right wrist, and that he had uncomfortable range of motion in his left shoulder and low back. Dr. Snatic stated that plaintiff's mental status was normal. He opined that the origin of plaintiff's pain was myofascial, meaning that the pain was due to the muscles or to the tissue coverings of the muscles.
On January 5, 1989, Dr. Snatic saw plaintiff for complaints of continued headache, neck pain, shoulder pain, low back pain, and depression. A subsequent MRI scan was performed and revealed that plaintiff did not have disc disease.
After plaintiff's February 9, 1989, visit, Dr. Snatic felt that he had nothing further to offer plaintiff, so he scheduled plaintiff's next appointment for May 2, 1989. At that visit, plaintiff's primary complaint was jaw pain, but he also had complaints of muscular pain.
On March 1, 1991, Dr. Snatic last saw plaintiff, at which time plaintiff complained of neck, back, shoulder, and wrist pain. Dr. Snatic opined that plaintiff's pain was chronic in that he would probably continue to experience pain and that the myofascial pain was causally related to the November 10, 1988, accident. However, despite the pain that plaintiff felt, Dr. Snatic indicated that there was no great likelihood of serious injury that would tend to be a long-term disability to plaintiff.[3]
Margorie Bourgeois, physical therapist, testified that plaintiff was referred to her by Dr. Snatic in December of 1988. According to Bourgeois, she found objective evidence of muscle tightness or spasms in plaintiff's neck, as well as atrophy of the chest, lower back, and neck muscles.
*438 Dr. Jimmy D. Cole, clinical psychologist, testified that he first evaluated plaintiff on March 24, 1989. Several tests were administered to plaintiff, which revealed that plaintiff was not malingering and was severely depressed and that plaintiff's pain was interfering with his life. Dr. Cole diagnosed plaintiff with chronic pain syndrome, adjustment disorder with depressed mood, and major depression. According to Dr. Cole, plaintiff's best course of treatment would be increased activity, pain management, and psychotherapy. Dr. Cole felt that, at the time of trial, plaintiff was not yet able to return to work because he first needed to complete a pain management program. Dr. Cole opined that plaintiff's chronic pain syndrome and depression were caused by the November 10, 1988, accident.
On cross-examination, Dr. Cole acknowledged that there were other factors which might have contributed to plaintiff's chronic pain and depression, such as: (1) plaintiff's abandonment by his "common law" wife of twelve years; (2) his anger regarding complications with his worker's compensation benefits; and (3) his frustration with the unsuccessful medical treatment. Dr. Cole also stated that plaintiff had some passive-dependent characteristics, such as a desire for others to make decisions for him and to take care of him.
Dr. James Blackburn, psychiatrist, testified that he began treating plaintiff in April of 1989. Dr. Blackburn diagnosed plaintiff with major depression and chronic pain syndrome. Dr. Blackburn stated that plaintiff exhibits some characteristics of a passive dependent personality. He indicated that plaintiff has a need for someone to care for him, as well as to take care of him. However, Dr. Blackburn felt that, at the time of trial, plaintiff was independent. Dr. Blackburn indicated that plaintiff is disabled due to his chronic pain and depression and should be admitted to a chronic pain treatment facility. According to Dr. Blackburn, he felt, with a reasonable degree of medical certainty, that plaintiff's depression and chronic pain were causally related to the accident of November 10, 1988.
James Pearce, D.D.S., testified that he treats patients with temporal mandibular disorders and that he treated plaintiff for a temporal mandibular joint (TMJ) problem, which was causing pain in plaintiff's head and neck region. Dr. Pearce first saw plaintiff on May 4, 1989, and opined that plaintiff's subjective complaints were in conformity with his objective findings as revealed by an EMG. The EMG showed elevated electric activity in the chewing muscles and some of the neck muscles. Dr. Pearce also found muscle spasms in the muscles located on the side of the head, neck, and the facial muscles. Dr. Pearce opined that, based on plaintiff's history, plaintiff's symptoms were caused by the November 10, 1988, accident. However, he acknowledged that, prior to the accident, plaintiff had a severe malocclusion (uneven bite) and arthritis in the right jaw joint, which probably combined to make him more susceptible to developing TMJ problems after a muscular injury.
Dr. Clifton W. Shepherd, orthopedist, testified by deposition, stating that he first treated plaintiff on June 23, 1989. Dr. Shepherd performed a physical examination of plaintiff and opined that plaintiff was exaggerating his symptoms. X-rays of the cervical spine, wrist, and shoulder were normal. After the examination, Dr. Shepherd was unable to arrive at a diagnosis or an explanation for plaintiff's complaints.
On July 14, 1989, Dr. Shepherd saw plaintiff for the last time. A bone scan revealed a sprained wrist. But an arthrogram showed that plaintiff's shoulder was normal, and a MRI scan of his neck and back was normal.[4] Thus, Dr. Shepherd determined that the only objective finding was a sprained wrist. He did not assign any disability rating to plaintiff and felt that there was no reason why plaintiff could not return to work without restrictions.
Dr. Fred C. Webre, orthopedic surgeon, testified by deposition that he first treated plaintiff on January 24, 1990, for complaints *439 of low back pain, leg pain, neck pain, jaw pain, and testicular pain.[5] Dr. Webre stated that x-rays of plaintiff's back and wrist were normal and that plaintiff "had considerable symptomology without any specific objective evidence of impairment to function about his right wrist and hand as well as neck and low back." Dr. Webre stated that he would defer to the other physicians as to plaintiff's jaw pain, testicular pain, and psychiatric problems.
Dr. Rennie W. Culver, psychiatrist, evaluated plaintiff on December 11, 1991. Dr. Culver found that plaintiff suffered from a psyomataform pain disorder (pain with a non-physical basis), which was most likely due to a psychological problem. According to Dr. Culver, plaintiff has a dependency problem, i.e., he wants people to take care of him. Dr. Culver opined that plaintiff's dependent personality traits existed prior to the accident, but that the accident provided an opportunity for those subconscious needs to arise. Dr. Culver recommended that plaintiff be prescribed anti-depressants and that plaintiff return to work.
Plaintiff testified that, immediately following the accident, he experienced a headache and stiffness. Subsequently, he began experiencing back pain, neck pain, muscle spasms between his ear and jaw, and right wrist problems. According to plaintiff, he became depressed after the accident, had trouble dealing with people, and was angered by his physical limitations. Plaintiff was no longer able to care for the beagles which he raised and was unable to fish or hunt as before. By November of 1991, plaintiff was "at the end of [his] rope" and was admitted to Acadian Oaks Hospital for treatment of suicidal tendencies. Plaintiff indicated that he wears a back brace and an ace bandage on his right wrist. He is still upset, angry, and depressed.
Plaintiff's brother, Terry Daigle, testified that he was in the personnel basket with plaintiff when the basket fell and that he (Terry Daigle) suffered only minor injuries. According to Daigle, plaintiff indicated that he had been hit in the head by the ball and cable and that he was suffering from a headache. Daigle stated that, since the accident, his brother has not been able to fish or hunt and that he does not get out of the house very much.
Standards for appellate review of general damage awards are hard to explain, non-specific, and give us little guidance. See Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). See also Reck v. Stevens, 373 So.2d 498, 506 (La.1979). The abuse of discretion standard of review applicable to the JNOV of the trial court requires an inquiry as to whether the award for the particular injuries and their effects on the particular plaintiff under the particular circumstances is a clear abuse of the much discretion of the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d at 1261.
A review of the evidence convinces us that the trial court abused its much discretion in awarding plaintiff only $5,000.00 for physical pain and suffering and $5,000.00 for mental pain and suffering. The medical testimony reveals that plaintiff's psychiatric problems and TMJ problems were aggravated and/or caused by the November 10, 1988, accident.
Having determined that these two awards are abusively low and below that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances of this case, we must now consider prior awards to determine the lowest award which is reasonably within the discretion of the trier of fact. See Youn v. Maritime Overseas Corp., 623 So.2d at 1260. See also Reck v. Stevens, 373 So.2d at 500.
We have reviewed the record and the pertinent jurisprudence thoroughly and conclude that the lowest amount which a reasonable fact finder could award plaintiff for his physical pain and suffering is $25,000.00. The lowest amount a reasonable fact finder could award plaintiff for his mental pain and *440 suffering is $50,000.00. Therefore, the judgment is amended to increase plaintiff's award for physical pain and suffering from $5,000.00 to $25,000.00 and his award for mental pain and suffering from $5,000.00 to $50,000.00.

PAST MEDICAL EXPENSES
A plaintiff may ordinarily recover reasonable medical expenses, past and future, which he incurs as a result of the injury. Dowe v. Grady, 540 So.2d 1040, 1045 (La.App. 2nd Cir.1989).
In this case, the jury awarded plaintiff $5,788.63 for past medical expenses. The trial court subsequently denied plaintiff's motion for JNOV to increase this award. Therefore, our first determination is whether the trial court was correct in denying plaintiff's motion for JNOV. If reasonable persons could not differ that the award was abusively low, then the trial court was incorrect in denying the motion for JNOV.
After reviewing the record, it is clear that, due to the medical testimony regarding the extent of plaintiff's injuries and the time at which plaintiff was capable of returning to work, reasonable persons could not differ that the award of $5,788.63 for past medical expenses was abusively low. Therefore, the trial court was incorrect in denying plaintiff's motion for JNOV.
Having determined that the trial court incorrectly denied plaintiff's motion for JNOV as to past medical expenses, we must now determine the amount due plaintiff.
The record indicates that, on July 14, 1989, Dr. Shepherd determined that plaintiff suffered no disability and was capable of returning to work. This is the earliest indication in the record regarding the time at which plaintiff was capable of returning to work. Based on this information, the jury could have concluded that plaintiff was capable of returning to work as early as July 14, 1989.
In reviewing the medical bills and pharmacy invoices in the record, we have determined that the charges through July 14, 1989, totalled $14,893.29. This figure, however, excludes charges of $345.00 by Dr. Charles E. Moss, urologist, incurred by plaintiff prior to July 14, 1989, for treatment of testicular pain. Based on the testimony of Dr. Snatic and the lack of testimony or medical records of Dr. Moss, plaintiff did not show that the testicular pain was causally related to the November 10, 1988, accident. Therefore, we will not include these charges in the award. The judgment is amended to increase plaintiff's award for past medical expenses from $5,788.63 to $14,893.29.

FUTURE MEDICAL EXPENSES
An award for future medical expenses is, in great measure, highly speculative and is not susceptible of calculation with mathematical certainty. Gaspard v. Breaux, 413 So.2d 288, 292 (La.App. 3rd Cir.1982). However, like any other element of damage, future medical expenses must be established with some degree of certainty. Hunt v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 522 So.2d 1144, 1149 (La.App. 2nd Cir.1988). Awards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and setting out their probable cost. Brumfield v. Guilmino, 93-0366 (La.App. 1st Cir. 3/11/94), 633 So.2d 903, 908, writ denied, 94-0806 (La. 5/6/94), 637 So.2d 1056.
In the instant case, the jury did not award plaintiff future medical expenses. Plaintiff then filed a motion for JNOV to increase the award, but the trial court denied the motion. Therefore, we must determine whether the trial court was correct in so doing. If reasonable persons could differ that the award was abusively low, then the trial court correctly denied the motion for JNOV.
A review of the record reveals that the medical testimony regarding whether plaintiff will require future medical care is conflicting. Based on the conflicting evidence, we believe that reasonable people could differ that the award was abusively low. Therefore, the trial court was correct in denying plaintiff's motion for JNOV to increase the award for future medical expenses.
*441 Having found that the trial court correctly denied plaintiff's motion for JNOV as to future medical expenses, we must determine whether the jury abused its discretion in refusing to award plaintiff future medical expenses.
The record reveals that, at the time of trial, only Drs. Cole and Blackburn felt that plaintiff would require future treatment in a pain management program prior to his being able to return to work. All of the other physicians who testified at trial or by way of deposition found that plaintiff was not disabled and was capable of returning to work, without future medical care.
Based on the foregoing conflicting testimony, it was within the jury's discretion to conclude that plaintiff would not require future medical treatment. Therefore, we find no abuse of discretion in the jury's refusal to award plaintiff future medical expenses.

PAST LOST WAGES
It is the plaintiff's burden to prove past lost earnings and the length of time missed from work due to the accident. ANMAC Foundation, Inc. v. St. Patrick Hospital of Lake Charles, 594 So.2d 951, 956 (La.App. 3rd Cir.1992). Past lost earnings are susceptible of mathematical calculation from proof offered at trial, and an award for this element of damages is not subject to the much discretion rule. Ammons v. St. Paul Fire & Marine Insurance Co., 525 So.2d 60, 65 (La.App. 3rd Cir.), writ denied, 525 So.2d 1045 (La.1988).
In the instant case the jury awarded plaintiff $2,789.85 for "Loss of Wages, Past, Present and Future, and Loss of Earning Capacity." We do not know how the jury allocated this award between past lost wages and loss of future wages/loss of earning capacity. However, because the jury awarded plaintiff past medical expenses but did not award plaintiff future medical expenses, the jury must have concluded that plaintiff was capable of returning to work as of the time of trial. Therefore, we will assume that the jury's award of $2,789.85 was for past lost wages.
Plaintiff filed a motion for JNOV to increase the award of past lost wages, but the trial court denied the motion. Therefore, we must determine whether the trial court was correct in denying plaintiff's motion for JNOV. If reasonable persons could not differ that the award was abusively low, then the trial court incorrectly denied the motion for JNOV.
Because past lost wages are susceptible of mathematical calculation from proof offered at trial, we find that reasonable persons could not differ that the award of $2,789.85 for past lost wages was abusively low. Accordingly, we conclude that the trial court was incorrect in denying plaintiff's motion for JNOV as to past lost wages.
Given our finding that the trial court incorrectly denied plaintiff's motion for JNOV as to past lost wages, we must now determine the amount due plaintiff.
Bernard Pettingill, expert economist, testified that plaintiff has a work life expectancy of 26.2 years. Pettingill stated that, in calculating plaintiff's past lost wages, he reviewed plaintiff's income for the years 1984 through 1988. According to Pettingill, had plaintiff continued working in 1988 following the accident, his annual earnings would have been $15,629.15. Thus, Pettingill used this figure as the base rate to calculate plaintiff's past and future wage loss. Pettingill estimated plaintiff's past lost wages (from the accident to the date of trial, or 3.61 years) to be $56,422.00.
However, the earliest indication in the record regarding plaintiff's ability to return to work was by Dr. Shepherd on July 14, 1989. Based on this information, we conclude that plaintiff was capable of returning to work as of that date and will calculate his past lost wages based on the eight-month time period from the date of the accident to July 14, 1989.
According to the testimony of Pettingill, plaintiff's annual earnings were $15,629.15, or $1,302.43 per month. Therefore, the judgment of the trial court is amended to increase the award for past lost earnings from $2,789.85 to $10,419.44 ($1,302.43 × 8 months).

*442 LOSS OF FUTURE EARNINGS/LOSS OF EARNING CAPACITY

Earning capacity is not necessarily determined by actual loss; damages may be assessed for what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. Folse v. Fakouri, 371 So.2d 1120, 1124 (La.1979). Such damages are calculated on the person's ability to earn money rather on what he actually earned before the injury. Harris v. Pineset, 499 So.2d 499, 505-06 (La.App. 2nd Cir.1986), writs denied, 502 So.2d 114, 117 (La.1987); Hill v. Sills, 404 So.2d 1323, 1327 (La.App. 2nd Cir.1981).
Awards for lost future income are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. The courts must exercise sound judicial discretion in determining these awards and render awards which are consistent with the record and which do not work a hardship upon either party. Hunt v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 522 So.2d at 1152.
Factors to be considered in determining a proper award for lost future income are the plaintiff's physical condition before the injury, the plaintiff's past work history and consistency thereof, the amount the plaintiff probably would have earned absent the injury complained of, and the probability that the plaintiff would have continued to earn wages over the remainder of his working life. Morgan v. Willis-Knighton Medical Center, 456 So.2d 650, 658-59 (La.App. 2nd Cir.1984).
In computing loss of future income, it is first necessary to determine whether and for how long a plaintiff's disability will prevent him from engaging in work of the same or similar kind that he was doing at the time of his injury; it is necessary to ascertain whether he has been disabled from work for which he is fitted by training and experience. Morgan v. Willis-Knighton Medical Center, 456 So.2d at 659.
In Aisole v. Dean, 574 So.2d 1248, 1252 (La.1991), the Louisiana Supreme Court stated as follows with regard to future wage loss or loss of earning capacity:
To obtain an award for future loss of wages and/or loss of earning capacity, a plaintiff must present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident. (Emphasis added). (Citations omitted).
In the instant case, the jury did not award plaintiff damages for loss of future earnings/loss of earning capacity. Plaintiff filed a motion for JNOV to increase the award, but the trial court denied the motion. Therefore, we must determine whether the trial court was correct in denying plaintiff's motion for JNOV. If reasonable persons could differ that the award was abusively low, then the trial court correctly denied the motion for JNOV.
Based on the conflicting medical testimony regarding the extent of plaintiff's disability and his ability to return to work, reasonable people could differ that the award was abusively low. Therefore, the trial court correctly denied plaintiff's motion for JNOV.
Having determined that the trial court was correct in denying plaintiff's motion for JNOV, we must now determine whether the jury abused its discretion in refusing to award plaintiff damages for loss of future wages/loss of earning capacity.
The record reveals that Dr. Shepherd felt that plaintiff was not disabled and could return to work without restrictions as early as July 14, 1989. Dr. Snatic testified that there was no great likelihood of long-term disability to plaintiff. Dr. Webre found that plaintiff was not disabled. However, Dr. Cole, psychiatrist, felt that plaintiff's chronic pain was disabling and required treatment prior to plaintiff being able to return to work. Similarly, Dr. Blackburn, also a psychiatrist, opined that plaintiff was disabled due to his pain and depression and required chronic pain treatment.
After reviewing all of the evidence in the record, it is clear that the medical testimony regarding plaintiff's disability is contradictory and, thus, fails to indicate with "reasonable certainty" that plaintiff suffers a "residual *443 disability" which is causally related to the November 10, 1988, accident. Therefore, the jury did not abuse its discretion in refusing to award plaintiff damages for future loss of earnings/loss of earning capacity. See Aisole v. Dean, 574 So.2d at 1252.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to award plaintiff $25,000.00 for physical pain and suffering, $50,000.00 for mental pain and suffering, $14,893.29 for past medical expenses, and $10,419.44 for past lost wages. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the defendants.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Other defendants were named in the action, but were subsequently dismissed on motions for summary judgment.
[2] On September 14, 1993, the trial court granted a motion for summary judgment in favor of Amoco Production Company and against Gianfala & Son, Inc. on the reconventional demand.
[3] Dr. Snatic stated that he received a call from plaintiff on December 9, 1991, at which time plaintiff complained of testicular pain. However, Dr. Snatic opined that the testicular pain was not causally related to the November 10, 1988, accident.
[4] Dr. Shepherd stated that the MRI might have revealed a slight bulge, but he still felt that the results of the MRI were normal.
[5] Plaintiff indicated to Dr. Webre that Dr. Charles E. Moss, urologist, had given him injections for testicular pain. Dr. Webre deferred to Dr. Moss with regard to any alleged testicular problems.