STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-447


JO ANNA SAVANT, ET AL.

VERSUS

HOBBY LOBBY STORES, INC.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20091570
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.


                                                        **AFFIRMED.**

Jeffrey Michael Bassett
James P. Ryan
Richard T. Haik, Jr.
Morrow, Morrow, Ryan & Bassett
P. O. Drawer 1787
Opelousas, LA 70507
Telephone:  (337) 948-4483
COUNSEL FOR:
        Plaintiffs/Appellees - Jo Anna Savant, et al.

Ian Alexander Macdonald
Jones Walker
P. O. Drawer 3408
Lafayette, LA 70502
Telephone:  (337) 593-7600
COUNSEL FOR:
        Defendants/Appellees - Ace American Insurance Company and Hobby
        Lobby Stores, Inc.

**THIBODEAUX, Chief Judge.**

While she shopped at Hobby Lobby in Lafayette, two large clocks fell from a wall display and struck the plaintiff, Jo Anna Savant, in the head. Suffering injuries, Ms. Savant filed suit against Hobby Lobby, alleging negligence. Following a trial, a jury returned a verdict in favor of Ms. Savant finding that fault or negligence on behalf of Hobby Lobby existed, and that this fault or negligence was the legal and cause-in-fact of the accident. The jury awarded Ms. Savant past medical expenses in the amount of $219,824.04; loss of consortium to each of Ms. Savant's children in the amount of $50,000.00; past, present, and future physical pain and suffering in the amount of $40,000.00; and past lost wages in the amount of $130,000.00. The jury failed to award Ms. Savant damages for mental anguish, suffering, or disfigurement; loss of enjoyment of life; loss of future earnings or earning capacity; and past and future loss of household services.

Ms. Savant moved for JNOV. The trial court granted in part and denied in part Ms. Savant's motion. In granting the JNOV, the trial court increased the damages for past lost wages from $130,000.00 to $150,000.00; awarded damages for past loss of household services in the amount of $15,000.00; increased the damages for past, present, and future physical and mental pain and suffering from $40,000.00 to $250,000.00; and awarded damages for loss of enjoyment of life in the amount of $100,000.00. The trial court refused to modify the jury's award regarding loss of future earning capacity and loss of future household services.

Hobby Lobby appealed. Ms. Savant answered the appeal and asserts that the trial court properly granted JNOV with regard to past, present, and future physical and mental pain and suffering; past, present, and future loss of enjoyment of life; and past lost wages. She argues in her Answer, however, that the trial court erred in denying JNOV on the issues of loss of future earnings and loss of future household

services.  She also urges us to increase the trial court's JNOV damages award and to order Hobby Lobby to pay all interest and court costs.  For the following reasons, we affirm the judgment of the trial court.

## I.

## ISSUES

We will consider whether:

(1)    the trial court properly granted in part and denied in part Ms. Savant's Motion for JNOV;

(2)    the trial court properly excluded Ms. Savant from the jury verdict form, precluding a comparative fault analysis;

(3)    the jury properly awarded Ms. Savant the cost of her second cervical fusion; and

(4)    the jury properly awarded Ms. Savant's children damages for loss of consortium.

## II.

## FACTS

Ms. Savant was injured at the Hobby Lobby store in Lafayette, Louisiana.  While bending at the waist to look at an item on a lower shelf, two large clocks fell and struck Ms. Savant on the head.  Each of the clocks weighed approximately seventeen pounds.  Ms. Savant, who was shopping alone, was the only witness to the accident.  Immediately following the accident, Ms. Savant summoned management at Hobby Lobby to report the incident.  At trial, Ms. Savant testified to her account of the accident, and the store manager testified that, in her opinion, the manner in which the clocks were suspended on the display was unsafe.  No evidence was submitted by Hobby Lobby to show that Ms. Savant or any other individual caused the clocks to fall.

2

Following the accident, Ms. Savant began experiencing pain and discomfort. She went to Opelousas General Hospital where she was diagnosed with a closed head injury and treated for swelling and tenderness on the back of her head. The day after the accident, Ms. Savant visited her treating physician, Dr. Kirk Elliott, who diagnosed her with a contusion to the head. One week after the accident, Ms. Savant visited a chiropractor, complaining of neck pain.

Dr. Elliott eventually referred Ms. Savant to Dr. David Weir, a neurologist. What followed was an extensive attempt at non-surgical treatment. Specifically, over the next few months, Ms. Savant engaged unsuccessfully in physical therapy, received nerve injections, and underwent other conservative treatment. She also underwent several diagnostic procedures, including a nerve conduction study and an MRI. An MRI of her cervical spine showed bulging or protruding disks at the C4/5, C5/6, and C6/7 levels. Approximately six months after the accident, she first saw Dr. George Williams, an orthopedic surgeon.

After reviewing the MRI, Dr. Williams prescribed a discogram to determine which disc was the generator of her pain. Based on the results of the discogram, Dr. Williams recommended surgery at the C5/6 level of the spine. Though Ms. Savant suffered multiple level injuries, Dr. Williams recommended a single level surgery. In an attempt to avoid surgery, Ms. Savant underwent several additional non-surgical interventions. They failed to relieve her symptoms, and Dr. Williams performed her first cervical surgery in January 2009.

Following the first surgery, Ms. Savant continued to experience neck pain, but she experienced some resolution of her arm pain. Approximately one month following her surgery, in February 2009, Ms. Savant injured the site of surgical incision while trying to restrain her autistic son. She followed up with the hospital and saw Dr. Weir one month later. She informed Dr. Weir of the incident with her

3

son and reported that she had no neck complaints at that time. Dr. Weir examined her neck and confirmed that her neck had no additional injury.

Despite her initial improvement, Ms. Savant continued to experience neck pain and numbness in her upper extremities. Over one year after the incident with her son, Dr. Williams performed a second surgery, removing the other injured discs and performing a three-level anterior cervical discectomy fusion.

At the time of the accident at Hobby Lobby, Ms. Savant was a thirty-six year old single mother of two boys. Before the accident, she worked as a full duty registered nurse and was actively engaged with her children. She frequently took them to various activities including bowling, skating, and to the waterpark. Before the accident, she experienced some situational anxiety and depression.

Following the accident, however, her physical limitations caused her anxiety and depression to greatly increase. The financial strain combined with the physical pain led her to suffer significant emotional distress. The physical and emotional trauma affected the relationship she had with her sons, and she became reliant on family members to assist her in caring for her boys.

III.

**LAW AND DISCUSSION**

**Standard of Review**

A jury's finding of fact may not be reversed absent manifest error or unless it is clearly wrong. *Stobart v. State, through Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). "The jury's determination of the amount, if any, of an award of damages . . . is a finding of fact." *Ryan v. Zurich Am. Ins. Co., et. al.*, 07-2312, p. 7 (La. 7/1/08), 988 So.2d 214, 219. The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's findings; it must instead "review the record in its entirety to determine whether the

4

trial court's finding was clearly wrong or manifestly erroneous." *Stobart,* 617 So.2d at 882. The issue to be resolved on review is whether the fact finder's conclusion was a reasonable one, not whether it was right or wrong. *Id.* The reviewing court must always keep in mind that "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 882-83 (quoting *Housley v. Cerise,* 579 So.2d 973, 976 (La.1991)).

## Discussion

### Motion for Judgment Notwithstanding the Verdict

A motion for JNOV may be granted on the issue of liability or on the issue of damages or on both. La.Code Civ.P. art. 1811(F). In *Anderson v. New Orleans Public Service*, 583 So.2d 829, 832 (La.1991), the supreme court outlined the standard for determining whether a JNOV has been properly granted:

> A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

More recently, in *Davis v. Wal-Mart Stores, Inc.*, 00-445, p. 5 (La. 11/28/00), 774 So.2d 84, 89, the supreme court articulated the standard of review on appeal for a JNOV:

> The standard of review for a JNOV on appeal is a two part inquiry. In reviewing a JNOV, the appellate

court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. *Anderson v. New Orleans Public Service, Inc.*, [583 So.2d 829, 832 (La. 1991)].

In general, the standard of review of a JNOV on appeal is twofold. First, we determine "whether the jury verdict is supported by competent evidence and is not wholly unreasonable." *Daigle v. U.S. Fidelity & Guar. Ins. Co.*, 94-304, p. 8 (La.App. 1 Cir. 5/5/95); 655 So.2d 431, 436. We consider all of the evidence in the light most favorable to the party opposing the motion. If we find that the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on the issue, the JNOV was properly granted. Second, the JNOV is reviewed pursuant to the manifest error standard of review. *Id.*

Likewise, "[w]hen a trial court grants a JNOV as to damages, both the decision to grant [the JNOV] . . . and the resulting increase or decrease in the award, must be reviewed." *Higley v. Kramer*, 581 So.2d 273, 278 (La.App. 1 Cir. 1991), *writ denied*, 583 So.2d 483 (La.1991). Once we have established that the trial court correctly applied its standard of review in setting aside the jury's damage award, we review the trial court's award under the manifest error standard of review. If the award is not manifestly erroneous, it is reviewed under the constraints of *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976), i.e., the abuse of discretion standard of review. *Daigle*, 655 So.2d 431.

The abuse of discretion standard of review requires an inquiry as to whether the award for the particular injuries and their effects on the particular plaintiff under the particular circumstances is a clear abuse of the much discretion of the trier

6

of fact. Only after such a determination of an abuse of discretion is made, should we resort to prior awards for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Youn v. Maritime Overseas Corp.,* 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059.

### *Grant of JNOV*

Hobby Lobby argues the trial court erred in partially granting Ms. Savant's motion for JNOV and increasing her general damages award; increasing her award for past lost wages; and increasing her award for past lost household services. Ms. Savant appeals the trial court's denial of JNOV on the issue of future earnings and future household services. For the following reasons, we find that the trial court's grant of the JNOV on general damages, past lost wages, and past lost household services was warranted. We, therefore, affirm the trial court's grant of the JNOV in favor of Ms. Savant. We do not disturb the trial court's findings on the issues of future earnings or future household services.

### *(1) General Damages*

In the present case, the jury awarded Ms. Savant general damages in the amount of $40,000.00, accounting solely for Ms. Savant's past, present, and future physical pain and suffering. The jury declined to award damages for Ms. Savant's past, present, and future mental anguish or suffering and/or disfigurement, and loss of enjoyment of life.

Hobby Lobby asserts on appeal that the jury's $40,000.00 award reflects its consideration of Ms. Savant's subsequent accidents and the role they played in her pain and suffering. It points out that Ms. Savant suffered two injuries after the incident at Hobby Lobby. Specifically, before surgery was recommended, Ms. Savant suffered a fall where she struck her head and lost consciousness. Following her first surgery, she injured herself when she was struck in the head while struggling with her

7

son. Hobby Lobby urges that the jury's $40,000.00 award indicates that it recognized that these intervening causes relieved Hobby Lobby of liability for any additional damages.

Ms. Savant argues that there is no question that the jury related her injuries and surgeries to the Hobby Lobby incident. She asserts that all of her treating physicians stated that her injuries and both surgeries were caused by and related to the Hobby Lobby accident.

What is indisputable from the record is that Ms. Savant suffered neck pain as a result of the Hobby Lobby incident. In the months following the accident, Ms. Savant sought relief via conservative measures such as physical therapy, injections, and chiropractic care. She ultimately underwent two separate surgeries to relieve her neck pain. Hobby Lobby does not dispute that Ms. Savant will continue to suffer pain from the accident. Indeed, its own expert testified that her pain will likely not improve despite further treatment.

In addition to her physical pain, Ms. Savant suffered mentally and emotionally. Specifically, our thorough review of the record indicates that Ms. Savant's injuries and inability to function "normally" with her children caused her great pain and anxiety. She understandably experienced stress from the financial strain placed on her due to her inability to return to work as a nurse, and she suffered anxiety due to the physical limitations she experienced when trying to remain active with her small children.

"[L]oss of enjoyment of life is a compensable component of general damages" that also involves the inherently speculative valuation of a person's quality of life, which cannot be definitively measured. *McGee v. A C & S, Inc.,* 05-1036, p. 4 (La. 7/10/06), 933 So.2d 770, 774. These damages serve to compensate for the "detrimental alterations of a person's life or lifestyles or a person's inability to participate in the activities or pleasures of life that were formerly enjoyed." *Id.* at 773.

8

Hobby Lobby argues that "simply because a plaintiff sustains personal injuries, [that does not] compel an award for loss of enjoyment of life." While we agree with that statement, we do not agree that the trial court erred in granting JNOV on this issue. The jury heard ample testimony regarding Ms. Savant's limitations. She was an active individual until the accident. Following the accident, she could no longer participate in a host of activities that brought her pleasure. Thus, we find no merit in Hobby Lobby's argument regarding loss of enjoyment of life.

Hobby Lobby's contention that the trial court erred in its granting of the JNOV in favor of Ms. Savant on the element of general damages is without merit.

*(2) Special Damages*

Hobby Lobby also challenges the grant of JNOV on the issue of special damages. It asserts that the trial court erred by altering the jury's verdict with respect to past loss of household services and past lost wages.

In addition to her physical pain and suffering, the record indicates that Ms. Savant suffered a loss of past household services. Due to her serious injuries, Ms. Savant was unable to care for her household as she had previously. Her ability to cook and clean for her family and to generally maintain her household was greatly affected. We find no error in the trial court's grant of JNOV on the issue of past loss of household services.

Similarly, we find no error in the trial court's grant of JNOV on the issue of past lost wages. Hobby Lobby argues that the jury attributed some of Ms. Savant's past lost wages to subsequent accidents; that argument is inconsistent, however, as evidenced by the jury's award of all of Ms. Savant's past medical expenses. The trial court's grant of JNOV on this issue rectified the jury's inconsistent verdict.

*Denial of JNOV*

Ms. Savant contests the trial court's denial of JNOV on the issues of loss of future household services and loss of future earning capacity. We affirm the trial court's denial of JNOV on these issues. After a thorough review of the record, we find no error in the trial court's denial of JNOV on the issues of loss of future household services and loss of future earning capacity. The evidence related to these issues does not point so strongly in favor of Ms. Savant that reasonable men could not reach different conclusions. Thus, we find no merit in this assignment of error.

**QUANTUM**

In the alternative, Hobby Lobby argues that should this court affirm the trial court's grant of the JNOV, that the trial court erred in awarding Ms. Savant an additional $310,000.00 in general damages and an additional $35,000.00 in special damages. Conversely, Ms. Savant argues that the trial court erred in its methodology in awarding her additional damages. Consequently, we should increase the trial court's award. We disagree with both parties.

*(1)* *General Damages*

Having determined that the trial court was correct in granting JNOV, we must consider whether the $310,000.00 general damage award was an abuse of its discretion. This court, in *Smoot v. Hernandez*, 08-1121, p. 10 (La.App. 3 Cir. 3/4/09), 6 So.3d 352, 360 (quoting *Bowie v. Young*, 01-715 (La.App. 3 Cir. 3/20/02), 813 So.2d 562, 571-72, *writ denied*, 02-1079 (La. 6/21/02), 819 So.2d 335), recently set forth the appellate standard for assessing damages awarded after a grant of JNOV:

> Damages awarded after a motion for JNOV is granted are subject to the following guidelines:
>
> > Once a trial court has concluded that JNOV is warranted because reasonable men could not differ on the fact that the award was either abusively high or abusively low, it must then determine what is the proper

10

amount of damages to be awarded. In making this determination, the judge is not constrained as the courts of appeal are to raising (or lowering) the award to the lowest (or highest) point which is reasonably within the discretion afforded the court. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976).

....

The appellate court, in determining whether the trial court erred in granting the JNOV as to quantum, once again uses the criteria set forth in [*Scott v. Hosp. Serv. Dist. No. 1*, 496 So.2d 270 (La.1986)], i.e., could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was either abusively high or abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury's damage award should be reinstated. On the other hand, if the answer is in the negative, then the trial court properly granted the JNOV, and its damage award based on its independent assessment of the damages is the judgment of the trial court which is reviewed on appeal under the constraints of *Coco* [v. *Winston Industries, Inc.*, 341 So.2d 332 (La.1976) ].

*Anderson*, 583 So.2d at 833–34.

The medical evidence established that Ms. Savant underwent two surgeries to remedy her neck pain. The trial court opined that the $40,000.00 awarded for pain and suffering was "off" and thus increased the award to $250,000.00. The trial court also noted that undisputed evidence was presented that Ms. Savant suffered loss of enjoyment of life. The court then awarded $100,000.00 for loss of enjoyment of life. Based upon our review of the record as discussed above, we cannot say that the amount of general damages awarded by the trial court was an abuse of its vast discretion.

Neither can we agree with Ms. Savant that the trial court used an improper standard in awarding those damages and that "the lowest reasonable amount that can be awarded in general damages is $500,000.00." In determining the proper

amount of damages to be awarded following the granting of JNOV, the trial judge is not constrained, as are courts of appeal, to raising or lowering awards to the lowest or highest point reasonably within the discretion afforded that court. The trial court is to render a de novo award based on its independent assessment of the injuries and damages. *Anderson*, 583 So.2d at 829. Nothing indicates that the trial court did otherwise. Finding that the trial court did not abuse its discretion in awarding general damages, we find no merit in Ms. Savant's argument that the general damage award should be increased.

### *(2)    Special Damages*

Hobby Lobby contends that the trial court erred by awarding Ms. Savant an additional $35,000.00 in special damages—$15,000.00 for past loss of household services and $20,000.00 for past lost wages. In his reasons for judgment, the trial judge referenced expert testimony regarding both of these issues. Our review of the record finds no abuse of discretion by the trial court.

### Exclusion of Ms. Savant from the Jury Verdict Form

Hobby Lobby argues that the trial court erred in dismissing its affirmative defense of comparative fault sua sponte. In brief, Ms. Savant explains that the issue arose during an off-record jury charge conference. No evidence of this conference exists in the record. We agree that absent a motion to exclude Ms. Savant from the jury verdict form, it was error for the trial court to dismiss this issue on its own motion. "[O]nly a party may bring a motion for directed verdict on an issue." *Frazier v. Zapata Protein USA, Inc.*, 02-605, p. 7 (La.App. 3 Cir. 12/11/02), 832 So.2d 1141, 1148, *writs denied*, 03-145 (La. 3/21/03), 840 So.2d 537 and 03-126 (La. 3/21/03), 840 So.2d 539.

This court, in *Frazier*, facing a nearly identical issue, found that though the trial court erred in dismissing a party's affirmative defense of comparative fault,

the error was harmless since the record was devoid of any evidence that Frazier was at fault. *Id.* We find the same to be true here. The record contains no evidence of Ms. Savant's fault in causing the accident. Accordingly, Hobby Lobby's position is without merit.

### Jury's Grant of Medical Expenses to Ms. Savant

Hobby Lobby argues that the jury erred in awarding Ms. Savant damages for her second surgical fusion because a subsequent accident necessitated Ms. Savant's second surgery. An award of special damages is reviewed pursuant to the manifest error standard of review, unlike a general damage award which is reviewed pursuant to the abuse of discretion standard. *Hornsby v. Bayou Jack Logging*, 03-1544 (La.App. 3 Cir. 5/5/04), 872 So.2d 1244. Thus, "[t]he adequacy or inadequacy of the award should be determined by the facts or circumstances of the case under consideration." *Id.* at 1248. The plaintiff bears the burden of proving entitlement to special damages by a preponderance of the evidence. *Id.* Thus, we must determine whether the jury was manifestly erroneous in awarding Ms. Savant $57,950.00 in compensation for the second surgical fusion.

The jury was presented with voluminous amounts of testimony regarding Ms. Savant's medical history as well as testimony regarding the second accident involving Ms. Savant's son, which Hobby Lobby alleges necessitated the second surgery. Ms. Savant's surgeon, Dr. Williams, testified thoroughly about Ms. Savant's physical condition before and after both surgeries. With regard to the accident involving her son and the need for a second surgery, Dr. Williams testified on direct examination as follows:

> Q. Could [the accident with her son] be a contributing factor to her second surgery?
>
> A. Yes, sir.
>
> Q. Despite the fact that that's a contributing factor to her second surgery, do you still think that more probably

than not the necessity for the second surgery is related to the original accident?

A. Yeah. Because like I said, we always saw that she had two (2), and the radiologist, three (3) levels that seemed to have some pathology to it. We were hoping the discogram would have been what we could definitively delineate which definitive levels we could stick to. It helped out with the arm pain but not so much with the axial pain. But ultimately we went ahead and addressed the levels that were there originally.

On cross-examination, Dr. Williams maintained his position, stating, "the incident that she had with her son was a mitigating factor that probably didn't instigate the requirement of the second surgery, but whether it did or not, I'm not sure." Dr. Weir, Ms. Savant's treating neurologist, agreed with Dr. Williams' surgical recommendations, opining that Ms. Savant's injuries were directly related to the accident at the store.

After reviewing the record in its entirety, we find no error in the jury's award of special damages to compensate Ms. Savant for the second surgical fusion.

**Loss of Consortium**

Hobby Lobby argues that the jury's award of $50,000.00 to each of Ms. Savant's children for loss of consortium is erroneous and urges us to either reduce the award or overturn it completely. We decline to do so.

Hobby Lobby asserts that the "award to Savant's children is as surprising as it is inexplicable, because they barely warranted a footnote during the five day trial." This argument is short-sighted and without merit. During the five-day trial, the jury heard evidence about Ms. Savant's life as a single mother to two boys, one of whom has autism. They heard how, prior to the accident at Hobby Lobby, Ms. Savant was an active mother who took her children bowling, skating, out to eat, to the waterpark, and engaged with them in their everyday play. The jury also heard testimony about her physical and emotional limitations following the accident. She could no longer be the active and engaged mother she was before. In the words of

14

Hobby Lobby, awards to children for loss of consortium compensate the children for "loss of love and affection, society and companionship, aid and assistance, comfort and felicity."  We find that the jury did just that, and we find no error in their award to Ms. Savant's children.

IV.

## CONCLUSION

For the reasons articulated above, we affirm the judgment of the trial court.  Costs of this appeal are assessed against Appellant, Hobby Lobby.

**AFFIRMED**.