696 So.2d 625 (1997)
Rick L. HORTMAN
v.
LOUISIANA STEEL WORKS.
No. 96 CA 1433.
Court of Appeal of Louisiana, First Circuit.
June 20, 1997.
*626 Richard D. McShan, Amite, for Plaintiff/Appellant, Rick L. Hoitman.
Kristi L. Stroebel Burnthorne, Metairie, for Defendant/Appellee, Louisiana Steel Works.
Before GONZALES and KUHN, JJ., and CHIASSON,[1] J. Pro Tem.
GONZALES, Judge.
This is an appeal of a workers' compensation case. Rick L. Hortman was employed by Louisiana Steel Works and suffered an accident on June 5, 1993. On October 19, 1993, Dr. Anthony Iopollo performed back surgery on Mr. Hortman. Mr. Hortman was paid weekly workers' compensation benefits from the date of injury until his benefits were terminated on May 18, 1995. Mr. Hortman then filed a disputed claim for benefits, and, after trial on the merits, the hearing officer ruled in favor of Louisiana Steel Works, dismissing the claims of Mr. Hortman and assessing him with costs. Mr. Hortman is appealing that judgment, and raises the following issues in his assignments of error:
1. Whether the hearing officer erred as a matter of fact and law in finding that Mr. Hortman was not entitled to continued weekly benefits and medical treatment.
2. Whether the hearing officer erred as a matter of law in failing to strike the deposition of Dr. Anthony Iopollo taken after an ex parte meeting with counsel for the defendants.
3. Whether the hearing officer erred as a matter of law in failing to rule on Mr. Hortman's "Motion To Change Treating Physician."
The standard of review applicable to factual findings of district courts is also applicable to factual findings of an administrative body or hearing officer. In workers' compensation cases, the appropriate standard of review to be applied by appellate courts is the "manifest error-clearly wrong" standard. Alexander v. Pellerin Marble & Granite, 93-1689 pp. 5-6 (La.1/14/94); 630 So.2d 706, 710. For an appellate court to reverse a hearing officer's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the hearing officer or that the record established that the finding is clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).

ASSIGNMENT OF ERROR NO. 1
Mr. Hortman testified at trial that he had difficulty walking up three steps into his house, that he could not walk further than about fifty feet, and that he had not been to the mall in years. A videotape taken by a private investigator for the defendant showed Mr. Hortman in the year prior to the trial, *627 strolling through the Hammond mall, climbing stairs and walking throughout the mall with no apparent difficulty.
A vocational rehabilitation expert, Todd Capielano, testified that he found a number of light and sedentary jobs within Mr. Hortman's restrictions, but that Mr. Hortman did not put out the necessary effort to get the jobs.
Dr. Iopollo stated that there were signs of symptom magnification in his examinations. Further, at one point, Mr. Hortman was seeing Dr. Iopollo and Dr. Cefalu and getting narcotic prescriptions from both of them at the same time. Dr. John R. Clifford, a neurosurgeon, stated in his progress notes from April of 1994 that, upon learning from the pharmacist that Mr. Hortman had a history of narcotic use prior to his injury, and upon learning that Mr. Hortman was attempting to get multiple refills of his prescriptions, he was declining to authorize any further refills for him.
A functional capacity evaluation in September of 1994 by David Heap, a physical therapist, revealed symptom magnification and inconsistencies between measured movements and spontaneous movements.
The hearing officer found that from the evidence presented, including the opinions of Dr. Iopollo and Dr. Nyboer, the report of the physical therapist, the report of the pharmacist, and the testimony of the vocational rehabilitation specialist, the defendants had adequate reason to terminate Mr. Hortman's compensation benefits when they did, and we find no manifest error in that conclusion. This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment of error, Mr. Hortman argues that the hearing officer erred in admitting the deposition of Dr. Iopollo because the defense counsel had an improper ex parte communication with this treating physician prior to taking his deposition, citing Boutte v. Winn-Dixie of Louisiana, Inc., 95-1123 (La.App. 3rd Cir. 4/17/96), 674 So.2d 299. The doctor-patient privilege is well recognized in most states through statutory enactments. Likewise, Louisiana provided for such a privilege through statutes. In 1992 the Louisiana legislature enacted Chapter 5 of the Louisiana Code of Evidence, establishing numerous testimonial privileges, among which is La. C.E. art. 510, which created the health care provider-patient privilege. Louisiana Code of Evidence article 510 is straightforward, and, in section B(1), a general privilege is created for confidential communications, which reads as follows:

General rule of privilege in civil proceedings. In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives.
This section statutorily creates the privilege. It is followed by the exceptions, which read in part, as follows:

Exceptions. There is no privilege under this Article in a non-criminal proceeding as to a communication:
(a) When the communication relates to the health condition of a patient who brings or asserts a personal injury claim in a judicial or worker's compensation proceeding.
A simple reading of this exception as it relates to this case makes it clear that the mere filing of a personal injury claim destroys or takes away the health care provider-patient privilege created in 510 B(1). From this point forward, no real discussion is necessary on the issue of health care provider-patient privilege. The plaintiff in this case filed a workers' compensation claim in which he alleged numerous injuries, including anatomical disability, functional disability, and residual pain in his back which disabled him. Attached to his claim of personal injury are numerous medical reports. From that point forward, the plaintiff has waived any possible claim of the health care provider-patient privilege.
The health care provider-patient privilege, like the attorney-client privilege, the Fifth Amendment privilege and other privileges, *628 both testimonial and constitutional, are whole concepts and do not exist in piecemeal fashion. The privilege either exists or it does not. It cannot be selectively invoked or selectively waived. Parties are not entitled to claim a privilege, either testimonial or constitutional, on information which is unfavorable to them, while at the same time attempting to waive the privilege in regard to information that is favorable to them. Many legal authorities have recognized this idea with regard to what other jurisdictions call the physician-patient privilege.
But it is not human, natural, or understandable to claim protection from exposure by asserting a privilege for communications to doctors at the very same time when the patient is parading before the public the mental or physical condition as to which he consulted the doctor by bringing an action for damages arising from that same condition. This, in the oft-repeated phrase, is to make the privilege not a shield only, but a sword.
The conclusion mandated by these considerations clearly is that a patient voluntarily placing his or her physical or mental condition in issue in a judicial proceeding waives the privilege with respect to information relative to that condition.
McCormick On Evidence, Practitioner Treatise Series at 384 (4th ed. vol.1).
The same idea was expressed by Justice Traynor in the case of City and County of San Francisco v. Superior Court, 37 Cal.2d 227, 231, 231 P.2d 26 Pacific App.2nd 26, 28 (1951), when he said "the patient-litigant exception precludes one who has placed in issue his physical condition from invoking the privilege on the ground that the disclosure of his condition would cause him humiliation. He cannot have his cake and he eat it too."
The plaintiff argues that Section E of La. C.E. art. 510 limits the exception provided in Section B(2). Louisiana Code of Evidence article 510(E) provides:

Waiver. The exceptions to the privilege set forth in Paragraph (B)(2) shall constitute a waiver of the privilege only as to testimony at trial or to discovery of the privileged communication by one of the discovery methods authorized by Code of Civil Procedure Article 1421 et seq., or pursuant to R.S. 40:1299.96 or R.S. 13:3715.1.
This section seems to indicate that the exception to the privilege, i.e., the release of documents or information covered by the privilege, can only be effectuated through testimony at trial, proper discovery procedure, or in accordance with the procedural rules set up in R.S. 40:1299.96 or those procedures set up in R.S. 13:3715.1. Generally, these procedures require that a patient sign or give some sort of written authorization to his health care provider for the release of his privileged information. In addition, it seems to serve as a protection to health care providers by providing clear ground rules which authorize the release of information. R.S. 13:3715.1 also provides a procedural mechanism for a patient to object to the release of information and for the judicial disposition of contested matters in this regard. These statutes establish a procedure for the release or transfer of information that had been covered by the privilege, and that is all they do. Nothing in article 510 of the Code of Evidence or any of these other statutes preclude, prevent, or prohibit the flow of information from a litigant, an attorney, or anyone else for that matter to a health care provider. Therefore, under the facts of this case where information was disclosed by an attorney to a health care provider, we find no violation of La. C.E. art. 510.
Even if there had been a violation of this code article, section G of La. C.E. art. 510 makes it clear that any sanctions for such a violation should be against the attorneys in the case, and not against the litigants, and should not in any case result in the exclusion of evidence.
In this case, plaintiff failed to tell Dr. Ioppolo the whole truth. He told Dr. Ioppolo that he could not work, but failed to tell him that the only jobs he had tried were of medium level work, not the sedentary to light positions authorized by his doctors. Based on the information provided to him by plaintiff, Dr. Iopollo originally stated that Mr. Hortman was unable to engage in gainful employment.
*629 Defense counsel spoke with Dr. Ioppolo to give him the information Mr. Hortman failed to tell him about the jobs he had attempted being of a more strenuous level of work than he had been released to do by his doctors. Mr. Hortman had ample notice of this communication with Dr. Iopollo. Counsel for plaintiff was present at the subsequent deposition of Dr. Iopollo by counsel for defendant, and counsel for plaintiff cross-examined Dr. Iopollo at this deposition. Counsel for plaintiff had ample time to prepare a rebuttal to Dr. Iopollo's testimony and could have subpoenaed Dr. Iopollo to testify at trial if he felt Dr. Iopollo's deposition should not be used in lieu of his testimony. We find that the hearing officer's determination to allow Dr. Iopollo's deposition into evidence and let it be considered with the weight of the other evidence was not an abuse of discretion, nor was it manifest error. This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 3
Prior to trial, Mr. Hortman filed a motion to change treating physicians from Dr. Iopollo to another orthopedic/neurosurgeon of his choice based upon the "poisoning" of Dr. Iopollo by counsel for defendant's ex parte communications with Dr. Iopollo. The motion, not specifically ruled on by the hearing officer, is deemed denied. We find no abuse of discretion in the denial of this motion. This assignment of error has no merit.
Therefore, for the foregoing reasons, the judgment of the hearing officer is AFFIRMED. Costs are assessed against Mr. Hortman.
KUHN, J., concurs and assigns reasons.
KUHN, Judge, concurring.
I agree with the conclusions reached in the majority opinion. Whether or not Dr. Ioppola's testimony is considered in determining the merits of this lawsuit, the ultimate conclusions reached by the majority is correct.
I must concur, however, to point out what is inappropriate action by the defendant in this case. The majority correctly states that the physician-patient privilege is waived with the filing of this suit. While this is an accurate statement of the law, the opinion fails to differentiate between loss of this privilege and inappropriate action by an attorney.
The Code of Professional Conduct has as a general theme professionalism and honor. We should not condone actions by attorneys which do not conform to the spirit of the Code. Although contacting an opponent's treating physician is not in violation of the physician-patient privilege, it clearly impugns upon the Code's mandate of professionalism. The practice of law should be a search for truth, through honorable and professional means long established but perhaps forgotten.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.