STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-1544 consolidated with 03-1545


BARRY HORNSBY AND LARRY HORNSBY

VERSUS

BAYOU JACK LOGGING, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 77,587 C/W 77,617
HONORABLE JULES DAVID EDWARDS, III, DISTRICT JUDGE


**********
ULYSSES GENE THIBODEAUX
CHIEF JUDGE
**********


Court composed of Ulysses Gene Thibodeaux, C.J., Sylvia R. Cooks, and Oswald A. Decuir, Judges.


AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.


Jerry Joseph Falgoust
Dauzat, Falgoust, Caviness and Bienvenu, L.L.P.
P. O. Box 1450
Opelousas, LA 70571-1450
Telephone:  (337) 942-5811
COUNSEL FOR:
    Defendants/Appellants - Republic Vanguard Insurance Company,
    Kenneth Guillot and Bayou Jack Logging


Christopher Shannon Hardy
Penny & Hardy
P. O. Box 2187
Lafayette, LA 70502-2187
Telephone:  (337) 231-1955
COUNSEL FOR:
    Defendant/Appellant - Republic Vanguard Insurance Company
Frederick Lewis Welter

**P. O. Box 635**
**Rayne, LA 70578-0635**
**Telephone: (337) 334-8951**
**COUNSEL FOR:**
  **Secondary Plaintiffs/Appellants - Barry Hornsby, Larry Hornsby,**
  **Douglas Guidry, and Bernadette Guidry**

THIBODEAUX, Chief Judge.

In these consolidated timber trespass cases the defendants, Bayou Jack Logging (Bayou Jack), Kenneth Guillot (Guillot), the owner of Bayou Jack and Bayou Jack's insurer, Republic Vanguard Insurance Company (Republic), admit to wrongfully cutting down trees on the property of the plaintiffs, Barry and Larry Hornsby (the Hornsbys), and Douglas and Bernadette Guidry (the Guidrys). The defendants appeal the judgment of the trial court awarding the plaintiffs costs for replacing/restoring trees to their property. The defendants also appeal the amount awarded by the trial court in damages, asserting that the award was abusively high.

The Hornsbys and the Guidrys also filed appeals questioning the trial court's judgment that their damage amount should be reduced by their comparative fault. They also assert that the trial court erred in failing to award them the full amount of restoration damages. For the following reasons, we affirm the decision of the trial court with respect to the amount of damages awarded and with respect to awarding restoration costs. We reverse the trial court's decision to reduce the plaintiffs' recovery by twenty percent.

I.

**ISSUES**

The issues in these consolidated cases are:

(1)     whether the trial court erred in allowing the plaintiffs to claim restoration/replacement costs when they did not specifically plead in their petition damages for restoration/replacement of the trees cut;

(2)     whether the trial court abused its discretion in the amount of damages it ultimately awarded; and,

(3)     whether the trial court erred in ruling that the plaintiffs' recovery should be reduced by twenty percent for their comparative fault in failing to fence

1

their properties on all sides when the defendants failed to specifically plead comparative fault as an affirmative defense.

## II.

## FACTS

In June 2001, Bayou Jack contracted with landowners in the Roberts Cove area of Acadia Parish to conduct logging operations. However, it did not contract with the Guidrys or the Hornsbys who also owned land in that area. While cutting timber, Bayou Jack employees crossed the boundary of the Cramer land and removed trees from acreage owned by the plaintiffs. There is no dispute that Bayou Jack cut, felled and removed the trees without the plaintiffs' consent. The trial court found that Bayou Jack was in good faith when it cut the trees on the Guidry and Hornsby land. This finding is also not in dispute.

The Hornsbys, two brothers, purchased their land from their family estate in 1994. They testified that they camped, hunted, and rode horses on the land and planned to build on the land. Larry planned to build his retirement home and Barry planned to build a weekend camp. The Guidrys, husband and wife, testified that the land they purchased in 1976 had been owned by Mrs. Guidry's relatives and that they too planned to build their retirement home on the land. Mr. Guidry had built many homes in the past in connection with his earlier ownership of a lumberyard and construction company. He also testified that a portion of the property was intended as a home site for his daughter and son-in-law.

Trial by judge in this matter was held in May 2003 with testimony from Mr. Guidry, the Hornsbys and Kenneth Guillot (Guillot), the owner of Bayou Jack, as well as a number of experts in forestry, tree valuations, real estate appraisal and arboriculture. The issue at trial was the amount of damages due to the plaintiffs. In

2

their petition, the plaintiffs requested that the court award damages in an amount "three times the full amount of the damages sustained." At the conclusion of trial, the trial court awarded the Guidrys damages in the amount of $155,000.00 and the Hornsbys damages in the amount of $224,000.00, subject to a twenty percent reduction for comparative fault. The trial court found that the plaintiffs were comparatively negligent for the cutting of the trees because they failed to fence their properties on all sides. It is from this judgment that both the plaintiffs and defendants appeal.

## III.

## LAW AND DISCUSSION

### *Failure to Plead Special Damages*

The defendants assert that the plaintiffs did not specifically allege restoration/replacement damages in their petition and, therefore, the trial court erred in awarding those damages. The defendants further note that the plaintiffs requested damages pursuant to La.R.S. 3:4278.1 in their petition. Louisiana Revised Statutes 3:4278.1 provides, in part, that anyone who, in good faith, cuts and removes any trees on the property of another without the property owner's consent, is liable to the property owner for three times the fair market value of the trees that were cut and removed. The statute does not provide for restoration/replacement damages. The plaintiffs contend that they did not have to make a special allegation specifically requesting restoration/replacement damages as long as the defendants were put on notice that their damage request included the costs of returning their property to its original condition.

"'Special damages are those which either must be specially pled or have a 'ready market value,' i.e., the amount of the damages supposedly can be determined

with relative certainty.'" *Wainwright v. Fontenot*, 00-492, p. 5 (La. 10/17/00), 774 So.2d 70, 74, *quoting,* Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7-2 (Michie 1996) (footnotes omitted). Items of special damages must be specifically alleged in the pleadings. La.Code Civ.P. art. 861. Generally, a trial court may not award special damages which have not been specifically plead. Citing a first circuit decision relied upon by the defendants in the present case, *Stevens v. Winn-Dixie of Louisiana*, 95-435 (La.App. 1 Cir. 11/9/95), 664 So.2d 1207, the second circuit discussed the purpose of La.Code Civ.P. art. 861 in *Wily v. McDay*, 34,985, p. 5 (La.App. 2 Cir. 10/31/01), 799 So.2d 624, 627, which is "to avoid the imposition of surprise upon the defendant." Louisiana Code of Civil Procedure Article 1154 provides the only exception to the general rule announced in La.Code Civ.P. art. 861, and provides in pertinent part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings."

In their pretrial memorandum, the plaintiffs urged that the "proper measure of damages [to their property] is the cost of restoring the property to its condition prior to the damage." Also the plaintiffs' expert witnesses, Bruce Willis, an ornamental and shade tree expert, and Robert Thibodeaux, an arborist, testified in their depositions regarding the value of the trees cut and the cost to restore the plaintiffs' property to its pre-cut condition. The plaintiffs also asserted recovery pursuant to La.Civ.Code art. 2315 that requires one who causes damage to another to repair that damage. Evidence of the restoration costs were litigated at trial. We find that the defendants were not surprised that the plaintiffs would seek to recover restoration damages as opposed to requesting triple the cost of the market value of the trees removed, pursuant to La.R.S. 3:4278.1.

4

Under the circumstances presented in this case, we find that the pleadings were amended to include the special damages of restoration/replacement costs. Therefore, the issue of the cost of replacing the cut trees and restoring the plaintiffs' property was properly before the trial court.

### *Quantum*

Both parties contend that the amount awarded by the trial court was an abuse of discretion. The defendants assert that the amounts of $154,000.00 for the Guidrys and $224,000.00 for the Hornsbys are too high. The defendants further assert that an award that is twelve times the market value of the property damaged is abusively high. Conversely, the plaintiffs assert that those amounts are too low. The plaintiffs argue that the damage amount should be the cost to replace the trees that were cut and removed with trees of the same size. The amount of damages awarded by the trial court is the amount plaintiffs' expert testified that it would cost to replace the cut trees with new trees that are six inches in diameter.

The quantum question in this appeal is whether the trial court's award for restoration was reasonable. The trier of fact is accorded great discretion in the determination of damages. The role of an appellate court in reviewing an award of damages is not to decide what it considers to be an appropriate award, but rather to review the trier of fact's discretion to determine whether that discretion was abused. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994). The adequacy or inadequacy of the award should be determined by the facts or circumstances of the case under consideration. *Corbello v. Iowa Production*, 02-826 (La. 2/25/03), 850 So.2d 686. The burden is on the plaintiffs to prove special damages by a preponderance of the evidence. *Johnson v. State through Dept. of Public Safety and Corrections,* 95-3 (La.App. 1 Cir. 10/6/95),

671 So.2d 454, *writ denied*, 95-2666 (La. 1/5/96), 667 So.2d 522. While we must defer to the trier of fact's great discretion in the assessment of general damages, the manifest error standard of review controls on the issue of the assessment of special damages. *Id.* After a thorough review of the record in this case, we conclude that the trial court did not err in awarding the Hornsbys, $224,000.00 and the Guidrys $154,000.00 in restoration damages.

The trial court based its decision largely upon the expert testimony presented at trial regarding the amount of money needed to replace the trees that were cut and removed from the plaintiffs' property with the result being to restore the property as close as possible to its original condition. The plaintiffs presented the expert testimony of Mr. Thibodeaux, an arborist they consulted to help them restore their property. Mr. Thibodeaux explained his expertise as a person who helps others make decisions about what to do with respect to trees on their property.

Upon Mr. Thibodeaux's examination of the Hornsby and Guidry property where the trees were cut, he saw tree stumps, erosion and some invasive species of trees beginning to take over the site. From his examination of the remaining tree stumps, he noted that most of the former trees were healthy water oaks. A forestry expert, Bruce Willis, was called by the Hornsbys to give them an appraisal of the value of the timber cut from their property. He testified at trial regarding the size, number and types of trees cut by the defendants. Mr. Thibodeaux testified that he agrees with Mr. Willis' opinion with respect to the size, number and types of trees cut. Mr. Willis' testimony corroborates Mr. Thibodeaux's assessment of the health of the trees cut. After Mr. Willis explained his method of counting the trees and determining their sizes, he concluded that sixty-six hardwood trees were taken from the Hornsby property and twenty-nine saw timber trees. Further, ninety-nine little trees were run over by Bayou Jack's "skidder." On the Guidry property, he found that there were

6

fifty-five hardwood pulpwood trees and fifty-three hardwood timber trees. Also, one hundred eight little trees were run over by Bayou Jack's skidder. He further testified that the sizes of the trees ranged from ten inches up to fifty inches in diameter. He estimated the value to be $600.00 per thousand board feet. The fifty inch trees cannot be replaced. Mr. Willis also estimated a value of the ornamental shade trees that were cut and removed. Mr. Willis testified that the value of the Guidry trees, cut and removed, is $115,439.20, and the value of the Hornsby trees, cut and removed, is $94,979.12. With respect to the timber value, Mr. Willis estimated the value to be $12,021.40 for the Guidrys and $10,507.89 for the Hornsbys.

To restore the property to its original condition, Mr. Thibodeaux testified that trees as large as those that were cut would have to be transplanted on the property. He explained that trees are replaced according to the trunk diameter size as opposed to the height of the trees. Due to the cost of finding trees with large diameter trunk sizes that match the trees that were cut and the terrain of the property, Mr. Thibodeaux recommended that the cut trees be replaced with trees that have a smaller diameter trunk size. According to Mr. Thibodeaux, the cost of acquiring and positioning replacement trees ranged in price from $650.00 for a four inch trunk diameter red oak to $50,000.00 for a tree with a fifty inch diameter trunk. He further explained that there would be an additional cost of transporting the trees to the property. If the replacement trees could be located in an area close to the property, the additional cost would be minimal. However, if the trees are far from the property the cost could be very high. Anything beyond a thirty-six diameter trunk sized tree would probably have a transportation cost added to the acquisition and replanting cost. Mr. Thibodeaux testified that he was comfortable with replanting trees with a four inch diameter trunk to restore the property. This type of restoration involves replacing trees with the same size trees that were cut.

Mr. Thibodeaux testified about another method of restoration called the "six inch replacement method." He explained that instead of basing the replacement trees on the size of the trees that were cut, a twenty-four-inch diameter trunk tree would be replaced with four trees of six-inch diameter. Although the property owners would not get exactly what they had before, the property would be nearly the same. Mr. Thibodeaux further explained that timber companies typically use one-year-old saplings to replace cut trees. However, according to Mr. Thibodeaux, the saplings would get "lost in the weeds" and "overrun by the invasive species." Thus, the plaintiffs' expert concluded, the timber company replacement procedure would not restore the property to as nearly as possible to its original condition.

The trial court found that Mr. Thibodeaux's "six-inch replacement procedure" was appropriate to restore the plaintiffs' property without giving the plaintiffs a windfall. In Mr. Thibodeaux's opinion, the "six-inch replacement procedure" is the best way to restore the property. To that end, the trial court awarded the Hornsbys $224,000.00 and the Guidrys $155,000.00. We find that the record supports the amounts awarded to the plaintiffs for restoration of their property. The defendants' claim that the amount is excessive and the plaintiffs' claim that the amount is too low are without merit.

### Comparative Fault

The trial court found that the plaintiffs were comparatively negligent in causing the damage to their property because they failed to fence the southern boundaries of their land, therefore leaving them vulnerable to property damage by good-faith loggers, like Bayou Jack, or timber pirates. Therefore, the trial court found that the Hornsbys were twenty percent at fault and the Guidrys were also twenty percent at fault for the damage done to their property. The plaintiffs assert that the

8

trial court erred in assessing them with any percentage of fault because the defendants failed to assert comparative negligence as an affirmative defense. We agree with the plaintiffs.

Pursuant to La.Code Civ.P. art. 1005, "[t]he answer shall set forth affirmatively . . . any . . . matter constituting an affirmative defense." "The policy behind [ La.Code Civ.P. art. 1005] is the prevention of 'trial by ambush.'" *Patterson v. State*, 95-1668, p. 8 (La.App. 3 Cir. 12/11/96), 685 So.2d 473, 478, *writs denied*, 97-27, 97-108 (La. 2/21/97), 688 So.2d 513, *quoting*, *Rider v. Fontenot*, 463 So.2d 951 (La.App. 3 Cir. 1985). Comparative fault must be pleaded as an affirmative defense and the party asserting the defense bears the burden of proving, by a preponderance of the evidence, that the negligence of the other party was a cause-in-fact of the accident. *Trahan v. Savage Industries, Inc.*, 96-1239 (La.App. 3 Cir. 3/5/97), 692 So.2d 490, *writs denied*, 97-1636, 97-1652 (La. 10/3/97), 701 So.2d 209. The defendants did not plead the affirmative defense of comparative fault. Therefore, the trial court's judgment reducing the plaintiffs' recovery amounts for their comparative fault is erroneous.

IV.

**CONCLUSION**

For the above reasons the judgment of the trial court is affirmed as to the type of damages to which the plaintiffs are entitled and its assessment of the amount of damages the plaintiffs should be awarded. The judgment is reversed and set aside insofar as it finds that the plaintiffs were comparatively negligent in causing damage to their property and insofar as it reduces their recovery based on the trial court's decision that they were twenty percent at fault for causing their property damage. Costs of this appeal are assessed to the defendants.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**