# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 04-482

JOHN NATHAN THIBEAUX

VERSUS

CHUCK R. TROTTER, ET AL.

**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2000-5445-E
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\***

**GLENN B. GREMILLION**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and Billy H. Ezell, Judges.

**AFFIRMED.**

**Randal L. Menard**
**P. O. Box 80795**
**Lafayette, LA 70598**
**(337) 232-8235**
**Counsel for Plaintiff/Appellee**
    **John Nathan Thibeaux**

**L. Lane Roy**
**Dawn L. Morris, Esq.**
**Preis, Kraft & Roy**
**P. O. Drawer 94-C**
**Lafayette, LA 70509**
**(337) 237-6062**
**Counsel for Defendants/Appellants**
  **Westport Insurance Company**
  **Chuck R. Trotter**
  **Schilling Distributing Company, Inc.**

GREMILLION, Judge.

The defendants, Schilling Distributing Company, Inc., Chuck R. Trotter, and Westport Insurance Company (collectively referred to as Schilling), appeal a jury verdict awarding the plaintiff, John Nathan Thibeaux, damages for future lost wages/loss of earning capacity and future medical expenses. For the following reasons, we affirm.

## FACTS

Thibeaux filed suit against Schilling after he was rear-ended by one of its delivery trucks on August 4, 2000. Schilling does not dispute liability. This matter proceeded to trial solely on the issue of damages. Following a jury trial, the jury awarded Thibeaux damages totaling $800,092.77. The jury award was broken down into the following categories:

**GENERAL DAMAGES**

| | |
|---|---|
| Physical injury suffered | $75,000.00 |
| Pain & Suffering, both physical and mental | $75,000.00 |
| Physical impairment | $ 0 |
| Permanent disability, if any | $ 0 |
| Loss of enjoyment of life | $ 0 |

**SPECIAL DAMAGES**

| | |
|---|---|
| Past Lost Wages | $30,000.00 |
| Future Lost Wages/Loss of Earning Capacity | $560,000.00 |
| Past Medical Expenses | $25,092.77 |

1

Future Medical Expenses $35,000.00

In response to this verdict, Schilling filed a motion for judgment notwithstanding the verdict and, alternatively, for a new trial arguing that the jury's award for future lost wages/loss of earnings capacity was inconsistent with its finding that Thibeaux suffered no permanent disability. It further argued that the award of $35,000 in future medical expenses was purely speculative and should be reduced to the amount proven at trial, $1500. Subsequent to a hearing, the trial court denied the motion finding that the awards made by the jury were "amply supported by the evidence that was presented." This appeal by Schilling followed.

## ISSUES

On appeal, Schilling reurges its JNOV arguments that the award of damages for future lost wages/loss of earning capacity was inconsistent with the finding of no permanent disability and seeks a reduction of the future medical expenses from $35,000 to $1500.

We further note that Thibeaux has raised three assignments of error in his appellate brief asking for an increase in the awards for past and future lost wages/loss of earning capacity and future medical expenses. However, since he failed to answer the appeal or appeal in his own right, as required by La.Code Civ.P. art. 2133, he waived his right to seek a modification of this judgment. *See Matthews v. Consol. Cos., Inc.*, 95-1925 (La. 12/8/95), 664 So.2d 1191. Thus, we shall not address his assignments of error.

## FUTURE LOST WAGES

The jury awarded Thibeaux $560,000 in future lost wages/loss of earning

2

capacity, but found that he suffered no monetary loss for permanent disability from the August 4, 2000 accident. Thus, Schilling argues that the jury award is inconsistent and should be reversed.

The types of damages awarded in a personal injury action consist of general and special damages. General damages, are speculative in nature and, thus, incapable of being fixed with any mathematical certainty. They include pain and suffering, physical impairment and disability, and loss of enjoyment of life. *Wainwright v. Fontenot*, 00-0492 (La. 10/17/00), 774 So.2d 70. Special damages, however, may be determined with some degree of certainty and include past and future lost wages and past and future medical expenses. *Id.* In this instance, the jury awarded Thibeaux special damages in the absence of an award for general damages.

In *Wainwright*, the supreme court held that it was not, per se, error for a jury to award a plaintiff special damages (medical expenses), but not to award general damages (pain and suffering). Rather than performing a de novo review in such a situation, the supreme court held that the proper course of action is for the reviewing court to first determine whether the factfinder's "determination that the plaintiff is entitled to [special damages] but not to general damages is so inconsistent as to constitute an abuse of discretion. Only after the reviewing court determines that the factfinder has abused its much discretion can that court conduct a *de novo* review of the record." *Id.* at 76. The matter at issue differs from *Wainwright* in that Schilling is not contesting the jury's failure to award general damages, rather, it argues that the jury erred in awarding special damages (future lost wages/loss of earning capacity) in the face of a zero award for general damages (permanent

3

disability).

The plaintiff bears the burden of proving entitlement to special damages by a preponderance of the evidence. *Hornsby v. Bayou Jack Logging*, 03-1544 (La.App. 3 Cir. 5/5/04), 872 So.2d 1244. An award of special damages is reviewed pursuant to the manifest error standard of review, unlike a general damage award which is reviewed pursuant to the abuse of discretion standard. *Id.* Thus, the "adequacy or inadequacy of the award should be determined by the facts or circumstances of the case under consideration." *Id.* at 1248. Thus, we must first determine whether the jury was manifestly erroneous in awarding Thibeaux $560,000 in future lost wages/loss of earning capacity.

After reviewing the record in its entirety, we first note that Thibeaux presented evidence that more probably than not, he has suffered permanent disability as a result of this accident. He was diagnosed as suffering from chronic pain syndrome of the lower back secondary to a ligament disruption at L5-S1 by Dr. Louis Blanda, an orthopedic surgeon. Dr. Blanda assigned Thibeaux a five percent total body disability and restricted him to light duty work. He was further diagnosed as suffering from moderate depression and chronic pain syndrome by Dr. F. T. Friedberg, a clinical psychologist. Although Schilling presented evidence that Thibeaux suffered a lower back injury in a 1984 accident, Dr. Blanda, the treating physician, reported that diagnostic testing performed at the time revealed no problems at L5-S1. While he released Thibeaux to light-duty work in 1985, after fifteen months of treatment, Dr. Blanda noted that Thibeaux was released to full unrestricted activities by Dr. Thomas Laborde, a physiatrist, on November 13, 1985. Thibeaux

4

then worked fifteen years for his employer, Williams Gas Pipeline, as a maintenance man and equipment operator, both manual labor positions, without any complaints. Accordingly, we find that more probably than not, Thibeaux proved he suffered permanent disability as a result of the August 4, 2000 accident.

We note that Schilling strenuously argues that the jury's finding of zero damages for permanent disability "translates into a jury factual determination that [Thibeaux] suffered no permanent disability," citing *Sengsouly v. Allstate Insurance Co.,* 99-22 (La.App. 3 Cir. 6/9/99) 744 So.2d 649, 653, *writ denied,* 99-2526 (La. 11/19/99), 749 So.2d 677. However, as in *Sengsouly*, we have found that the jury committed error in its finding regarding permanent disability. The reason we make this finding is to determine whether the jury erred in awarding Thibeaux damages for future lost wages/loss of earning capacity. Since Thibeaux failed to answer the appeal or appeal in his own right, the jury's failure to award him damages for permanent disability is a final judgment which may not be reversed on appeal.

> [B]ecause to so do would result in a modification in favor of the nonappealing defendant, contrary to Louisiana law. La.CCP art. 2133; *Jordan v. Travelers Ins. Co.*, 257 La. 995, 245 So.2d 151 (1971); *Williams v. City of Baton Rouge*, 252 La. 770, 214 So.2d 138 (1968); and *Britt Builders, Inc. v. Brister*, 618 So.2d 899 (La.App. 1st Cir.1993). While a defendant who has not appealed or answered the appeal and who did not seek modification, revision or reversal of that judgment may assert in support of that judgment any argument supported by the record under La.CCP art. 2133, he may not obtain a modification of the judgment without appealing or answering the appeal.

*Mathews*, 664 So.2d at 1191-92.

With regard to lost wages/loss of earning capacity, the jury heard testimony from several expert witnesses on this issue. Dr. Roy Womack, a professor of economics and finance, determined Thibeaux's future lost earnings based on two

5

figures. The first was based on him being totally disabled from work; the second on him returning to work at a lower wage than he was earning when injured. At the time of the accident, Thibeaux was earning $23.75 per hour and had been employed by Williams Gas, formerly Texas Gas Pipeline, approximately twenty-four years. Dr. Womack used $60,791 in his calculations for Thibeaux's actual earnings for 2000 ($56,401 + $4,389.61 his employer said he would have earned that year). He determined that the present-day value of Thibeaux's lost future earnings was either $953,772 or $1,231,000, based on a work-life expectancy of either 17.51 years[1] or 23.38 years.[2] Dr. Womack further determined Thibeaux's lost future fringe benefits and per diem: $114,453 and $20,710 for 17.51 years; and $147,720 and $26,730 for 23.38 years. Thus, if Thibeaux never returned to work, the present-day value of his lost future earnings would be either $1,088,935 ($953,772 + $114,453 + $20,710) or $1,405,450 ($1,231,000 + $147,720 + $26,730).

Dr. Womack also determined Thibeaux's future lost earnings if he returned to work earning $6.25 per hour. If he worked 17.51 years, then the present-day value of his future earnings would be $203,962 and his future lost earnings would total $884,973 ($1,088,935 - $203,962). If he worked another 23.38 years, then the present day value of his future earnings would be $263,246 and his future lost earnings would amount to $1,142,204 ($1,405,450 - $263,246).

On cross examination, Dr. Womack admitted that the amount he used for Thibeaux's actual 2000 wages was incorrect. His earnings in 2000 were actually

---

[1] This figure for work-life expectancy was taken from the Bureau of Labor Statistics.

[2] After 23.38 years, Thibeaux would be sixty-seven years old and eligible for full Social Security retirement benefits.

$37,784.53. However, Dr. Womack projected that Thibeaux would have earned $66,289 for 2000, had he not been injured. He testified that Thibeaux's highest earnings prior to the accident were $55,576 in 1999, and that his income had risen every year.

Glenn Hebert, a vocational rehabilitation counselor, determined that Thibeaux suffered a loss of earning capacity as a result of the August 4, 2000 accident, based on statements from the physicians, all of whom said that he was capable of performing only light-duty work. Light-duty involves frequent carrying, handling, or lifting of ten pounds, with occasional lifting of up to but not exceeding twenty pounds. Although he found that Thibeaux did have a problem with depression, Hebert stated that it was not debilitating.

Hebert testified that Thibeaux was earning $23.50 per hour at the time of the accident and approximately $58,000 per year. If no retraining was required, Hebert stated that Thibeaux could earn between $5.15 and $8.00 per hour or $11,000 and $16,000 per year as a dispatcher, light truck driver, security guard, warehouse worker, or forklift operator. However, he testified that Thibeaux could earn up to $10.00 per hour if he completed a vocational program in outdoor power equipment repair or basic electronics. Hebert testified that Thibeaux would have greater employment opportunities if he completed a three-month computer course and was then capable of entering data, taking orders, or looking up equipment on computers. However, he felt that the most accurate estimation of Thibeaux's earning capacity was $7.50 to $8.00 per hour.

Dr. John Grimes, a specialist in rehabilitation counseling, testified that Thibeaux was a good candidate for vocational rehabilitation. First, he felt that

7

Thibeaux could earn between $30,000 to $35,000 per year if he could still drive a truck. If his back prevented this, then Dr. Grimes agreed with Hebert that Thibeaux could earn between $5.50 and $7.50 per hour. However, he stated that Thibeaux could earn $12.00 per hour after technical training, which could increase to $15.00 per hour in three to five years. Dr. Grimes believed that Thibeaux was a good candidate for technical training since he had a good work history, hobbies consistent with technical training, satisfactory test scores, and a demonstrated history of vocational success.

Thibeaux testified that his work history consisted of manual labor through his employment with Williams Gas Pipeline. Prior to the accident, he stated that he restored several old vehicles, which entailed performing body work, minor mechanical repairs, and painting. At the time of the trial, Thibeaux felt that he could perform light-duty work. He further stated that he still had his commercial drivers license.

After reviewing the record, we find that the jury was presented with evidence concerning Thibeaux's future lost wages/loss of earning capacity. Although the evidence revealed that the present-day value of his future lost earnings was between $949,404 and $1,206,635, if he returned to work earning $6.50 per hour, the jury heard evidence that he was capable of earning up to $12.00 or $15.00 per hour with retraining. Considering that both Dr. Grimes and Hebert considered Thibeaux capable of being retrained, we find that it was reasonable for the jury to conclude that Thibeaux could earn substantially more than the $6.50 per hour wage used by Dr. Grimes in his calculations. Accordingly, we find no manifest error in the jury's

8

award of $560,000 in future lost wages/loss of earning capacity. The judgment of the trial court awarding this amount is affirmed; this assignment of error is dismissed as being without merit.

## FUTURE MEDICAL EXPENSES

In this assignment of error, Schilling argues that the jury erred in awarding Thibeaux $35,000 in future medical expenses when evidence during the trial only indicated future medical expenses of $1500.

The award of future medical expenses must be supported by medical testimony indicating both their need and probable cost. *Holliday v. United Servs. Auto. Ass'n*, 569 So.2d 143 (La.App. 1 Cir. 1990). "However, when the need for future medical care has been demonstrated but cost is not susceptible of determination, the court may make a reasonable award." *Id.* at 146 (citing *Guillory v. Avondale Shipyards, Inc.*, 448 So.2d 1281 (La.1984), and *Jordan v. Travelers Ins. Co.*, 257 La. 995, 245 So.2d 151 (1971)).

In this instance, the record reveals that Thibeaux will require future medical care and, thus, will incur future medical expenses. Dr. Friedburg estimated that his future care of Thibeaux will cost $1500. Dr. Blanda testified that Thibeaux's need for future medical treatment is dependent upon the status of his back pain. Unless Thibeaux's back heals or becomes asymptomatic, his treatment will continue. The evidence revealed that Dr. Blanda charges $70 per office visit. Dr. Daniel Hodges, a physiatrist, is attempting to manage Thibeaux's back pain. His records as of April 23, 2000, state that he is treating Thibeaux conservatively, with a return appointment scheduled for four months hence. Dr. Blanda indicated that Thibeaux

9

could continue treatment with Dr. Hodges indefinitely based on his continuing back pain. Dr. Hodges charged $155 for Thibeaux's April 23, 2003 office visit. Thibeaux also introduced the records of Farmer's Sav-More, which revealed medication costs from August 2000 through July 2003, of approximately $5020.

Considering this evidence, we find that Thibeaux, although he has not proven the exact costs of his future medical expenses, has proven that he will incur such costs in the future. After reviewing his past medical expenses, we find that the jury reasonably could have found that he would incur future medical expenses of $35,000. Although the amount of future medical care required by him is uncertain, a jury reasonably could have found that his pharmaceutical costs would continue and base its award on this need. Accordingly, we find no error in this award and affirm the trial court's judgment on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court awarding damages for future lost wages/loss of future earning capacity and future medical expenses is affirmed. The costs of this appeal are assessed to the defendants-appellants, Schilling Distributing Company, Inc., Chuck R. Trotter, and Westport Insurance Company.

**AFFIRMED.**

10